846 F.2d 486
 Mary Jo GREYWATER, Appellant,
v.
Honorable Lawrence R. JOSHUA, Jr., Chief Judge of the Devils
Lake Sioux Tribal Court; Carl McKay, Chairman of the Devils
Lake Sioux Tribe; Ken Sayers, Devils Lake Sioux Tribal
Prosecutor; Melvin Greybear, Captain of Police, Devils Lake
Fort Totten Agency; and Donald Morgan, Superintendent of
the Bureau of Indian Affairs Devils Lake Fort Totten Agency,
Appellees.
Anthony CHARBONEAU, Jr., Appellant,
v.
Honorable Lawrence R. JOSHUA, Jr., Chief Judge of the Devils
Lake Sioux Tribal Court; Carl McKay, Chairman of the Devils
Lake Sioux Tribe; Ken Sayers, Devils Lake Sioux Tribal
Prosecutor; Melvin Greybear, Captain of Police, Devils Lake
Fort Totten Agency; and Donald Morgan, Superintendent of
the Bureau of Indian Affairs Devils Lake Fort Totten Agency,
Appellees.
Raymond BUCKLES, Appellant,
v.
Honorable Lawrence R. JOSHUA, Jr., Chief Judge of the Devils
Lake Sioux Tribal Court; Carl McKay, Chairman of the Devils
Lake Sioux Tribe; Ken Sayers, Devils Lake Sioux Tribal
Prosecutor; Melvin Greybear, Captain of Policy, Devils Lake
Totten Agency; and Donald Morgan, Superintendent of the
Bureau of Indian Affairs Devils Lake Fort Totten Agency, Appellees.
 No. 87-5233.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 14, 1987.
Decided May 10, 1988.
 
 Jesse C. Trentadue, Salt Lake City, Utah, Rodney K. Smith, Widener Univ. Law School, Wilmington, Del., Maureen White Eagle, Devils Lake N.D., appellant.
 Reid Chambers and Edward J. Shawaker, Washington, D.C., for appellees.
 Before LAY, Chief Judge, and HEANEY and MAGILL, Circuit Judges.
 LAY, Chief Judge.
 
 
 1
 Mary Jo Greywater, Anthony Charboneau, Jr., and Raymond Buckles (Petitioners) appeal from the district court's[1] dismissal of their petitions for writs of habeas corpus filed pursuant to the Indian Civil Rights Act, 25 U.S.C. Sec. 1303. We reverse the decision of the district court.
 
 Background
 
 2
 Petitioners are enrolled members of the Turtle Mountain Band of Chippewa Indians. On June 22, 1985, they were arrested on the Devils Lake Indian Reservation in North Dakota. Petitioners were charged under the Devils Lake Sioux Tribal Code with possession of alcohol in a motor vehicle, public intoxication, and disorderly conduct. Charboneau was also charged with resisting arrest. Petitioners moved the Sioux Tribal Court to dismiss the charges against them, maintaining that the Tribal Court has no criminal jurisdiction over nonmembers of the Devils Lake Sioux Tribe. The Tribal Court denied these motions.
 
 
 3
 Petitioners then each filed for writs of habeas corpus in the United States District Court. They argued that the Devils Lake Sioux Tribal Court does not have criminal jurisdiction over nonmembers of the Devils Lake Sioux Tribe. The United States and the Devils Lake Sioux Tribe moved to dismiss the petitions for failure to exhaust tribal court remedies. The magistrate recommended that the motions to dismiss be denied. The district court, however, rejected this recommendation and ordered the petitions dismissed without prejudice, pending exhaustion of tribal court proceedings. This appeal followed.
 
 Discussion
 
 4
 The fundamental issue before us is whether the Devils Lake Sioux Tribal Court possesses inherent sovereignty to exercise criminal jurisdiction over nonmember Indians of its tribe. In United States v. Wheeler, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978), the United States Supreme Court stated that "Indian tribes * * * cannot try nonmembers in tribal courts. Oliphant v. Suquamish Indian Tribe, ante, [435 U.S.] p. 191 [98 S.Ct. p. 1011, 55 L.Ed.2d p. 209]." Wheeler, 435 U.S. at 326, 98 S.Ct. at 1087-88. One could reasonably assume that this "holding" would settle the issue before us. However, notwithstanding this explicit statement by the Supreme Court, the Ninth Circuit Court of Appeals has recently held that Indian tribes may exercise criminal jurisdiction over nonmember Indians. Duro v. Reina, 821 F.2d 1358 (9th Cir.1987). In addition, the Devils Lake Tribal Court is supported by the United States with a well-written and persuasive brief in urging that the Supreme Court did not mean what it said in Wheeler. Although we acknowledge the complexity of the issue, until the Supreme Court says that we are wrong, we are persuaded that the Court intended to say what it said in Wheeler. We therefore hold that the district court erred in requiring exhaustion of tribal court remedies and that the Petitioners' writs of habeas corpus should have been granted. Moreover, we hold that the Devils Lake Sioux Tribal Court does not have criminal jurisdiction over non-member Indians of the Devils Lake Sioux Tribe.[2]
 
 Exhaustion
 
 5
 We first turn to the question whether Petitioners should be required to exhaust tribal court remedies before proceeding in federal court. We hold that Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978), is direct authority that exhaustion of tribal court remedies is not required.
 
 
 6
 The district court relied primarily upon National Farmers Union Ins. Cos. v. Crow Tribe, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), in requiring tribal court exhaustion. In National Farmers Union, the Supreme Court required the non-Indian petitioners to exhaust their tribal court remedies before proceeding in federal court. However, National Farmers Union involved a civil proceeding. In fact, in National Farmers Union, the Supreme Court discussed its earlier refusal to require exhaustion of tribal court remedies in criminal cases as opposed to exhaustion in civil cases. See id. at 854-55, 105 S.Ct. at 2453 (citing Oliphant ). Suffice it to say, this involves a criminal case and we feel Oliphant's implicit holding is that exhaustion is not a predicate to the exercise of federal court jurisdiction in a criminal case where the ultimate sentence may exceed one year imprisonment.
 
 
 7
 There are additional reasons that militate against exhaustion under the circumstances of this case. In National Farmers Union the Supreme Court pointed out that exhaustion in a civil case should not be required where the record demonstrates futility and lack of ultimate due process. National Farmers Union, 471 U.S. at 856, n. 21, 105 S.Ct. at 2454, n. 21. In the present case the Sioux Tribal Court denied Petitioners' motion to dismiss for lack of jurisdiction without a hearing and without a record. This is far removed from the suggestion in National Farmers Union that exhaustion could serve to further illuminate the jurisdictional issue by an evidentiary hearing and briefing. Id. at 856, 105 S.Ct. at 2454. Encouraging the exercise of sovereignty by a tribal court through development and upgrading of its procedures is not served where the tribal court itself fails to do so. See id. at 856-57, 105 S.Ct. at 2454. Here although Petitioners did not attempt to appeal the Tribal Court ruling to the Tribal Appeals Court, there would have been no record to review. Furthermore, there are strong grounds in the record to suggest that Petitioners did not receive a fair hearing in the Tribal Court on their motion to dismiss. The tribal court judge, moreover, allegedly chided Petitioners that as nonmembers of the Sioux Tribe they would not receive a fair trial because only Sioux would be on the jury. The facts surrounding the arrest and charges lend additional corroboration to this concern. The person driving the car at the time of the arrests was a member of the Devils Lake Sioux Tribe as were the arresting officers. The passengers all were nonmember Chippewa Indians; only the nonmembers were arrested.
 
 
 8
 We hold under Oliphant that exhaustion of tribal remedies is not required to enable Petitioners to challenge the jurisdiction of the tribal court.
 
 Jurisdiction
 
 9
 We turn next to the fundamental issue of whether the criminal jurisdiction of the Devils Lake Sioux Tribal Court extends to Indians who are not members of the Devils Lake Sioux Tribe where the nonmembers are accused of committing an offense on the Devils Lake Indian Reservation. Although federal law has historically recognized Indian tribes as "unique aggregations" possessed with the inherent powers of sovereign nations to govern both their members and their territory, see Montana v. United States, 450 U.S. 544, 563, 101 S.Ct. 1245, 1257, 67 L.Ed.2d 493 (1981); Santa Clara Pueblo v. Martinez, 436 U.S. 49, 55, 98 S.Ct. 1670, 1675, 56 L.Ed.2d 106 (1978); Worcester v. Georgia, 31 U.S. (6 Pet.) 515, 559, 8 L.Ed. 483 (1832), the right of Indian nations to govern their own affairs is neither unlimited nor protected in all instances. Specifically, Indian tribes are prohibited from exercising those sovereign powers that are expressly terminated by Congress or "inconsistent with their status" as dependent nations. Oliphant, 435 U.S. at 208, 98 S.Ct. at 1021. Because Petitioners do not allege, nor do we find, that Congress has explicitly terminated the Devils Lake Sioux Tribe's authority to prosecute nonmember Indians, the determinative issue in this case is whether that power has been divested by necessary implication of the Sioux Tribe's status as a dependent nation.
 
 
 10
 In Oliphant, two non-Indians were charged with committing crimes on the Suquamish Indian Reservation. The Supreme Court ruled that the Suquamish tribal court did not have criminal jurisdiction to try and to punish them. Id. at 212, 98 S.Ct. at 1022. The Court rejected the Suquamish tribal court's argument that it possessed the authority to try non-Indians as part of its retained inherent power of government over the reservation. Id. at 195-96, 98 S.Ct. at 1014. The Court concluded that tribal criminal jurisdiction over non-Indians was never included in the concept of inherent tribal sovereignty, and that even if Congress did not intend to take criminal jurisdiction away from Indian tribes, the exercise of that jurisdiction over non-Indians is incompatible and, thus, secondary to the sovereignty of the federal government in ensuring that its citizens "be protected * * * from unwarranted intrusions on their personal liberty." Id. at 210, 98 S.Ct. at 1021.
 
 
 11
 In United States v. Wheeler, supra, the Supreme Court again discussed the principles of inherent tribal sovereignty. In Wheeler, the Supreme Court held that the double jeopardy clause did not bar the federal prosecution under 18 U.S.C. Sec. 1153 of a tribal member who had previously been convicted of a lesser included offense in the tribal court. 435 U.S. at 329-30, 98 S.Ct. at 1089. Although the Wheeler Court acknowledged the retained sovereign power of a tribe to punish tribal members who violate tribal criminal law, the Court again noted that Indian tribes have lost many of the attributes of sovereignty. In doing so, the Court emphasized that tribal courts cannot try nonmembers in tribal court. Id. at 326, 98 S.Ct. at 1087.
 
 
 12
 Petitioners acknowledge that Oliphant held that the Suquamish tribal court lacked authority to exercise criminal jurisdiction over non-Indians. Petitioners suggest, however, that Wheeler clarified that Oliphant meant that nonmembers of the tribe could not be charged and tried by the tribe, whether Indian or not. In support of their argument, Petitioners point out that Wheeler was decided sixteen days after Oliphant, and that the Wheeler Court clearly defined Oliphant as holding that the tribe lacked criminal jurisdiction over nonmembers. Wheeler, 435 U.S. at 326, 98 S.Ct. at 1087. Petitioners argue, moreover, that in subsequent opinions, the Supreme Court has described Oliphant and Wheeler as excluding nonmembers from the criminal jurisdiction of tribal courts. See Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 173, 102 S.Ct. 894, 920, 71 L.Ed.2d 21 (1982); Montana, 450 U.S. at 565, 101 S.Ct. at 1258; National Farmers Union, 471 U.S. at 852-53, n. 14, 105 S.Ct. at 2452, n. 14 (quoting Wheeler ).
 
 
 13
 The Devils Lake Sioux Tribe and the United States maintain that the Tribe has the necessary authority to try and punish nonmember Indians as part of its retained inherent sovereign power to maintain law and order on the reservation, to preserve the Sioux Tribe's self-determination, and to fill a jurisdictional void.[3] The Tribe and the United States persuasively argue that Oliphant's holding turned primarily upon the fact that Congress had provided federal court jurisdiction for criminal proceedings involving non-Indians in 18 U.S.C. Sec. 1152, and, thus, that Indian tribal courts retain all jurisdiction not otherwise taken from them by section 1152. Section 1152 reads:
 
 
 14
 Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.
 
 
 15
 This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.
 
 
 16
 Although section 1152 may seem to indicate that Congress's use of the term "Indian" was meant to include all Indians, regardless of tribal affiliation, other congressional pronouncements imply that non-Indians and nonmembers have the same status. See 25 U.S.C. Secs. 1321, 1322, and 1326. Nevertheless, it is not difficult to understand the result the Ninth Circuit reached in Duro in light of the above discussion. On closer analysis, however, we find that the Sioux Tribal Court lacks inherent jurisdiction to try Indians who are not members of the same tribe. Although we believe the Devils Lake Sioux Tribe retains inherent power to protect tribal self-government and control internal relations,[4] these powers of self-governance clearly focus inward and govern the internal rules and social relations by which tribal members live. Wheeler, 435 U.S. at 326, 98 S.Ct. at 1087; United States v. Kagama, 118 U.S. 375, 381-82, 6 S.Ct. 1109, 1112-13, 30 L.Ed. 228 (1886); see also Ex parte Crow Dog, 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030 (1883) (Sioux Tribe has criminal jurisdiction over tribal member accused of committing crime against another tribal member on the reservation). The exercise of criminal jurisdiction over nonmember Indians, however, is both beyond what is necessary to govern the internal rules and mores by which tribal members live and inconsistent with the dependent status of the Devils Lake Sioux Tribe. Oliphant, 435 U.S. at 208, 98 S.Ct. at 1020.
 
 
 17
 Although Oliphant concerned only non-Indians, the Supreme Court relied upon an analysis which compels this court to conclude that the Sioux Tribal Court cannot charge and try nonmembers of the tribe, whether Indian or not. Quoting from a concurring opinion of Justice Johnson, the Oliphant Court specified the nature of the limitation of the overriding sovereignty of the United States: " '[T]he restrictions upon the right of soil in the Indians, amount * * * to an exclusion of all competitors [to the United States] from their markets; and the limitation upon their sovereignty amounts to the right of governing every person within their limits except themselves.' Fletcher v. Peck, 6 Cranch 87, 147, 3 L.Ed. 162 (1810) (emphasis added)." Id. at 209, 98 S.Ct. at 1021.
 
 
 18
 The Wheeler Court also discussed the nature of tribal sovereignty. As indicated, in emphasizing that tribal courts cannot try nonmembers in tribal courts, the Wheeler Court emphasized that tribes "have a significant interest in maintaining orderly relations among their members and in preserving tribal customs and traditions * * *." Wheeler, 435 U.S. at 331, 98 S.Ct. at 1090 (emphasis added). In discussing the powers of Indian tribes, the Wheeler Court continually referred to "members" and "nonmembers." The Wheeler Court's analysis distinguishing nonmember Indians from tribal members was not inadvertent. Its very analysis requires such distinction. We deem it important to set it forth at length. As the court said:
 
 
 19
 It is undisputed that Indian tribes have power to enforce their criminal laws against tribe members. Although physically within the territory of the United States and subject to ultimate federal control, they nonetheless remain "a separate people, with the power of regulating their internal and social relations." United States v. Kagama, supra, [118 U.S.] at 381-382 [6 S.Ct. at 1112-13]; Cherokee Nation v. Georgia, 5 Pet. 1, 16 [8 L.Ed. 25]. Their right of internal self-government includes the right to prescribe laws applicable to tribe members and to enforce those laws by criminal sanctions. United States v. Antelope, 430 U.S. 641, 643 n. 2 [97 S.Ct. 1395, 1397 n. 2, 51 L.Ed.2d 701]; Talton v. Mayes, 163 U.S., at 380; Ex parte Crow Dog, 109 U.S. 556, 571-572, 3 S.Ct. 396, 405-06, 27 L.Ed. 1030; see 18 U.S.C. Sec. 1152 (1976 ed.), infra, n. 21.
 
 
 20
 435 U.S. at 322, 98 S.Ct. at 1085 (footnote omitted).
 
 
 21
 The powers of Indian tribes are, in general, "inherent powers of a limited sovereignty which has never been extinguished." F. Cohen, Handbook of Federal Indian Law 122 (1945) (emphasis in original). Before the coming of the Europeans, the tribes were self-governing sovereign political communities. See McClanahan v. Arizona State Tax Comm'n, 411 U.S. 164, 172 [93 S.Ct. 1257, 1262, 36 L.Ed.2d 129]. Like all sovereign bodies, they then had the inherent power to prescribe laws for their members and to punish infractions of those laws.
 
 
 22
 Id. at 322-23, 98 S.Ct. at 1085-86.
 
 
 23
 It is evident that the sovereign power to punish tribal offenders has never been given up by the Navajo Tribe and that tribal exercise of that power today is therefore the continued exercise of retained tribal sovereignty. Although both of the treaties executed by the Tribe with the United States provided for punishment by the United States of Navajos who commit crimes against non-Indians, nothing in either of them deprived the Tribe of its own jurisdiction to charge, try, and punish members of the Tribe for violations of tribal law. On the contrary, we have said that "[i]mplicit in these treaty terms ... was the understanding that the internal affairs of the Indians remained exclusively within the jurisdiction of whatever tribal government existed." Williams v. Lee, 358 U.S. 217, 221-222 [79 S.Ct. 269, 271, 3 L.Ed.2d 251]; see also Warren Trading Post v. Tax Comm'n, 380 U.S. 685 [85 S.Ct. 1242, 14 L.Ed.2d 165].
 
 
 24
 Id. at 323-24, 98 S.Ct. at 1086 (footnote omitted).
 
 
 25
 After further analysis, the Court stated: "Thus, far from depriving Indian tribes of their sovereign power to punish offenses against tribal law by members of a tribe, Congress has repeatedly recognized that power and declined to disturb it." Id. at 325, 98 S.Ct. at 1087 (footnote omitted).
 
 
 26
 These limitations rest on the fact that the dependent status of Indian tribes within our territorial jurisdiction is necessarily inconsistent with their freedom independently to determine their external relations. But the powers of self-government, including the power to prescribe and enforce internal criminal laws, are of a different type. They involve only the relations among members of a tribe. Thus, they are not such powers as would necessarily be lost by virtue of a tribe's dependent status. "[T]he settled doctrine of the law of nations is, that a weaker power does not surrender its independence--its right to self government, by associating with a stronger, and taking its protection." Worcester v. Georgia, supra, [6 Pet.] at 560-561.
 
 
 27
 Id. at 326, 98 S.Ct. at 1087 (emphasis added).
 
 
 28
 The Indian tribes are "distinct political communities" with their own mores and laws, Worcester v. Georgia, 6 Pet., at 557; The Kansas Indians, 5 Wall. 737, 756, [18 L.Ed. 667] which can be enforced by formal criminal proceedings in tribal courts as well as by less formal means. They have a significant interest in maintaining orderly relations among their members and in preserving tribal customs and traditions, apart from the federal interest in law and order on the reservation. Tribal laws and procedures are often influenced by tribal custom and can differ greatly from our own. See Ex parte Crow Dog, 109 U.S., at 571 [3 S.Ct. at 405].
 
 
 29
 Thus, tribal courts are important mechanisms for protecting significant tribal interests. Federal preemption of a tribe's jurisdiction to punish its members for infractions of tribal law would detract substantially from tribal self-government, just as federal pre-emption of state criminal jurisdiction would trench upon important state interests.
 
 
 30
 Id. at 331-32, 98 S.Ct. at 1090 (footnotes omitted).
 
 
 31
 Finally, in Washington v. Confederated Tribes of the Colville Indian Reservation, 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980), the Supreme Court again discussed the principles of inherent tribal sovereignty and articulated precepts that we find instructive. In ruling that nonmember Indians are not entitled to the same exemption from state tax on the sale of cigarettes as that enjoyed by tribal members, the Colville Court concluded that nonmember Indians have the same legal status as non-Indians in general. 447 U.S. at 161, 100 S.Ct. at 2085. The Court reasoned that the State of Washington's authority to tax cigarettes and the sale of cigarettes to nonmember Indians would not contravene the principle of tribal self-government because "nonmembers are not constituents of the governing Tribe * * * [and] [t]here is no evidence that nonmembers have a say in tribal affairs or significantly share in tribal disbursements." Id. Furthermore, in Colville, the Court not only used the terms nonmember and non-Indian interchangeably, but clearly characterized Indians resident on the reservation but not enrolled in the governing tribe as "nonmembers." Id. at 160, 100 S.Ct. at 2085. We believe this further supports Petitioners' argument that the Supreme Court's Oliphant and Wheeler holdings, as well as subsequent descriptions of those holdings, that tribal courts are without criminal jurisdiction over nonmembers, was meant to include nonmember Indians and non-Indians alike.
 
 
 32
 The Devils Lake Sioux Tribe's asserted criminal authority over nonmember Indians is of a completely different character than their broad power to control internal affairs. The power to control internal tribal affairs is consistent with the fundamental principle that "[i]n this Nation each sovereign governs only with the consent of the governed." Nevada v. Hall, 440 U.S. 410, 426, 99 S.Ct. 1182, 1191, 59 L.Ed.2d 416 (1979). However, because the Petitioners, like the non-Indian residents of the Devils Lake Reservation, cannot vote in tribal elections, hold tribal office, sit on tribal juries, become members of the Devils Lake Sioux Tribe, nor significantly share in tribal disbursements, Colville, 447 U.S. at 161, 100 S.Ct. at 2085, the powers that may be exercised over them are appropriately limited. We believe the above discussion compels the conclusion that the Devils Lake Sioux Tribe's power is limited to governing the internal rules by which tribal members live and enforcing tribal criminal laws against only tribal members who violate those laws.
 
 
 33
 In addition, we believe it would be anomalous to subject nonmember Indians to the Tribe's jurisdiction and yet exempt non-Indians. The record reveals that non-Indians comprise a majority on the Devils Lake Reservation. They are an integral part of the community. Non-Indians are employed by the Devils Lake Sioux Manufacturing Company, the tribal corporation. They are married to tribal members. They attend the same churches as the tribal members. Yet these non-Indian residents are clearly beyond the Devils Lake Sioux Tribe's criminal authority. Oliphant, 435 U.S. at 195, 98 S.Ct. at 1014. The Devils Lake Sioux Tribe asserts no greater interest in the affairs of nonmember Indians than it has in those of non-Indians.
 
 
 34
 As a final note, we believe our decision is supported by the fact that, based upon the record, there are significant racial, cultural, and legal differences between the Devils Lake Sioux Tribe and the Turtle Mountain Band of Chippewa Indians. These nonmember Indian Petitioners thus face the same fear of discrimination faced by the non-Indian petitioners in Oliphant: they would be judged by a court system that precludes their participation, according to the law of a societal state that has been made for others and not for them. Oliphant, 435 U.S. at 210-11, 98 S.Ct. at 1021-22 (citing Crow Dog, 109 U.S. at 571, 3 S.Ct. at 405). We believe this concern parallels concerns raised over 150 years ago which compelled the United States to exercise its criminal jurisdiction over tribal members who committed crimes against nonmembers and to enforce peace among certain Indian tribes. See Treaty with the Sioune and Ogallala Tribes, 7 Stat. 252 (1825); Treaty with the Sioux, Etc, 7 Stat. 272 (1825). We conclude the government's power to resolve intertribal disputes as evidenced by these treaties, exemplifies that the Indian tribes were without the necessary authority to enforce their own tribal laws against nonmembers. To do otherwise would contravene one of the principle reasons for the treaties; to insure peace among the various tribes.
 
 
 35
 We find the Devils Lake Sioux Tribe's exercise of criminal jurisdiction over nonmember Indians beyond what is necessary to protect the rights essential to the Tribe's self-government and inconsistent with the overriding interest of the federal government in ensuring that its citizens are protected from unwarranted intrusions upon their personal liberty. We thus conclude that the Tribe's authority to prosecute nonmember Indians is nonexistent.
 
 
 36
 The judgment of the district court is reversed, and the case remanded to the district court with directions to issue writs of habeas corpus declaring the Devils Lake Sioux Tribe to be without criminal jurisdiction over the Petitioners.
 
 
 
 [1]
 The Honorable Patrick A. Conmy, Chief United States District Judge for the District of North Dakota
 
 
 [2]
 In this appeal, Petitioners also maintain: (1) that they are entitled to the full protection of the Constitution; and (2) that the Sioux Tribal Court lacks criminal jurisdiction over them because Congress disestablished that portion of the Devils Lake Reservation where the offenses occurred. We need not pass upon these claims. We note, however, that this court recently upheld the continued existence of the Devils Lake Reservation. United States v. Grey Bear, 828 F.2d 1286, 1290-91, vacated in part on other grounds on reh'g en banc, 836 F.2d 1088 (8th Cir.1987)
 
 
 [3]
 Respondents claim that if the Devils Lake Sioux Tribal Court is without criminal jurisdiction, no government would have jurisdiction over most offenses because (1) all Indians committing major crimes on reservations are to be tried in federal court under 18 U.S.C. Sec. 1153, and (2) the state courts have no jurisdiction over Indians for crimes committed on the Devils Lake Reservation. See State v. Lohnes, 69 N.W.2d 508 (N.D.1955); but cf. Three Affiliated Tribes of Ft. Berthold v. Wold Engineering, 476 U.S. 877, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986). These considerations have little relevance to the principles which compel this court to conclude that the Devils Lake Sioux Tribe does not have criminal jurisdiction to try and punish these nonmember Petitioners. We note, moreover, that the record provided this court reveals that the Petitioners were also charged with criminal misdemeanor violations under state law for the offenses arising out of the same incident
 
 
 [4]
 The Devils Lake Sioux Tribe retains the power to punish tribal offenders, Wheeler, 435 U.S. at 322, 98 S.Ct. at 1085; to determine tribal membership, Roff v. Burney, 168 U.S. 218, 18 S.Ct. 60, 42 L.Ed. 442 (1897); to regulate domestic relations among tribe members, Fisher v. District Court, 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976); and to prescribe rules of inheritance of property for tribe members. Jones v. Meehan, 175 U.S. 1, 20 S.Ct. 1, 44 L.Ed. 49 (1899)