Rolland Richard MOUSSEAUX, a/k/a
Rolland Richard Driver, Plaintiff,

v.

UNITED STATES COMMISSIONER OF INDIAN AFFAIRS, Secretary of the Interior Superintendent of Rosebud Agency; Bureau of Indian Affairs; Cora Jones, Criminal Investigator, Bureau of Indian Affairs, Rosebud Agency; Woodrow Starr, Captain, Bureau of Indian Affairs Police, Rosebud Agency; Ronald Wilke, et al.; Rosebud Sioux Tribe; Janelle Reynolds, Tribal Judge; Sherman Marshall, Tribal Judge; Bob Brown, Tribal Court Attorney; Virgil Hauf, Tribal Court Attorney; Brenda Sitting Bear, Jailor; Dennis Holmes, Assistant United States Attorney; and Steve Gurue, Bureau of Indian Affairs Police, Defendants.

Civ. No. 91–3005.

United States District Court,
D. South Dakota, W.D.

Oct. 27, 1992.

Roland Richard Mousseaux, pro se.

David L. Zuercher, U.S. Attorney's Office, Pierre, S.D., Priscilla A. Wilfahrt, Dept. of Interior, Office of the Field Sol., Fort Snelling, Minn., for defendant U.S.

Terry L. Pechota, Rapid City, S.D., for Reynolds, Marshall, Brown, Hauf, Rosebud Sioux Tribe.

## MEMORANDUM OPINION

BATTEY, District Judge.

### PROCEDURAL HISTORY

Plaintiff Rolland Richard Mousseaux, a/k/a Rolland Richard Driver (Mousseaux) filed a complaint on February 6, 1991, against the named defendants. His complaint indicates numerous statutory and civil rights violations stemming from two criminal prosecutions, one by the federal government and one by the Rosebud Sioux Tribe, both of which were based on an assault committed by Mousseaux in Indian country.

Mousseaux is proceeding pro se and in forma pauperis in this civil action. On February 12, 1991, before any responsive pleading to his complaint was filed, Mousseaux amended his complaint to allege two new statutory violations involving defendants Woodrow Starr and Steve Gurue, and to add Dennis Holmes as a new defendant. The amended complaint alleged that Holmes was involved in the two new statutory violations along with defendants Starr and Guerue.

On May 13, 1991, defendant United States of America (the government) moved to dismiss Mousseaux's claims. The basis for the government's motion was Mousseaux's failure to file an administrative claim with the appropriate government agency as required by the Federal Tort Claims Act, 28 U.S.C. § 2675.

The government characterizes Mousseaux's claim as one sounding in tort rather than a civil rights claim because Mousseaux failed to allege intentional discrimination by the various defendants. Failure to file an administrative claim is a jurisdictional defect under the Federal Tort Claims Act. The government does not specifically invoke a statutory basis for its motion, but the argument for dismissal based on the fact that Mousseaux has failed to allege intentional discrimination must be viewed as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). The motion for dismissal based on failure to file an administrative claim in accordance with the Federal Tort Claims Act must be viewed as a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1).

Defendants Janelle Reynolds, Sherman Marshall, Bob Brown, and Virgil Hauf also moved to dismiss Mousseaux's claims against them on the ground that, among other things, Mousseaux failed to state a claim and that this Court lacks subject matter jurisdiction. Mousseaux responded twice to this motion. The three defendants who have not answered or filed a motion to dismiss are federal employees. Their claims should be considered to be covered by the government's pleadings. Thus, before the Court are motions to dismiss covering all claims asserted by Mousseaux against all defendants.

### FACTS

On February 25, 1990, Bureau of Indian Affairs officers arrested Mousseaux on tribal charges of assault. On April 20, 1990, a federal indictment was entered against Mousseaux, charging him with assault with a dangerous weapon in violation of federal law. On April 24, 1990, the tribal charges were dropped and Mousseaux was released. Mousseaux was held without bail in tribal jail from the date of his arrest in February until the tribal charges were dropped in April. On May 2, 1990, Mousseaux was arrested on the federal charges. A jury trial was held on October 30, 31, and November 1, 1990, in

which Mousseaux was convicted of the charges against him.

## DISCUSSION

### A. *Standard to be Applied*

#### 1. Construction of pro se Plaintiff's Pleadings

▆ Because Mousseaux represents himself in these proceedings, his pleadings must be "liberally construed and can be dismissed only if the face of the complaint shows an insuperable bar to relief." *Holt v. Caspari*, 961 F.2d 1370, 1372 (8th Cir. 1992) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972)). In addition, facts alleged by a *pro se* plaintiff in a response to a motion are to be viewed as *de facto* amendments to the plaintiff's complaint. *Ketchum v. City of W. Memphis*, 974 F.2d 81, 82 (8th Cir.1992).

#### 2. Motion to Dismiss for Lack of Subject Matter Jurisdiction

▆ The subject matter jurisdiction of federal district courts is wholly a creature of statute. *Continental Cablevision, Inc. v. United States Postal Serv.*, 945 F.2d 1434, 1435 (8th Cir.1991). When a motion is made to dismiss a complaint for lack of subject matter jurisdiction, the issue to be addressed is whether the court is empowered to hear the class of cases in which plaintiff's claim arises. *Id.* at 435–38. Whether or not plaintiff has stated a cause of action is a question going to the merits of the case and can only be addressed after a court assumes jurisdiction over the case. *Id.* at 1438. Therefore, if a court has jurisdiction over the class of claims into which plaintiff's claim falls, the court should assume jurisdiction unless the claim is "wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

#### 3. Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted

▆ When a motion pursuant to Rule 12(b)(6) is made, the court must view all well-pleaded factual allegations in the complaint as true and cannot dismiss the complaint unless it appears beyond a doubt that no set of facts can be proved which would entitle the plaintiff to relief. *Ketchum*, 974 F.2d at 83; *Dicken v. Ashcroft*, 972 F.2d 231 (8th Cir.1992); and *Concerned Citizens v. N.R.C.*, 970 F.2d 421, 425 (8th Cir.1992). All reasonable inferences arising from the facts pleaded must also be construed most favorably to the plaintiff. *Concerned Citizens*, 970 F.2d at 425. A district court's ruling on a Rule 12(b)(6) motion is reviewed on a *de novo* basis on appeal. *Ketchum*, 974 F.2d at 83; *Dicken*, 972 F.2d at 233; and *Concerned Citizens*, 970 F.2d at 425.

Taking all of the above into consideration, two issues are raised by the defendants' motions:

1. Whether, liberally construing the factual allegations made by Mousseaux in his complaint and pleadings responsive to the government motion, no set of facts could be proved which would entitle Mousseaux to relief; and

2. Whether, liberally construing Mousseaux's complaint and pleadings in response to the government motion, his claims are so "wholly insubstantial and frivolous" that this Court can be said to lack subject matter jurisdiction over them.

Because of the number and diversity of the claims raised by Mousseaux, each claim will be dealt with separately.

### B. *Claims Under the Indian Civil Rights Act*

Mousseaux alleges that the actions of the Rosebud Sioux Tribe and the individual defendants who are employees of the tribe violate provisions of the Indian Civil Rights Act, 25 U.S.C. §§ 1301–1303. This claim must be dismissed.

▆ The only remedy available in federal district court under the Indian Civil Rights Act is a writ of habeas corpus. *Runs After v. United States*, 766 F.2d 347, 353 (8th Cir.1985) (citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 64, 98 S.Ct. 1670, 1680, 56 L.Ed.2d 106 (1978)).

Actions seeking remedies other than a writ of habeas corpus for civil rights deprivations at the hands of tribal government must be pursued in tribal forums. *Runs After*, 766 F.2d at 353 (quoting *Goodface v. Grassrope*, 708 F.2d 335, 338 n. 4 (8th Cir.1983)). It is apparent that Mousseaux's claims based on violation of the Indian Civil Rights Act are not within this Court's jurisdiction because Mousseaux seeks money damages, not a writ of habeas corpus. These claims are accordingly dismissed.

### C. *Claims Under 25 U.S.C. § 1311*

Mousseaux alleges that the actions of the defendants violates 25 U.S.C. § 1311. This statute provides that the Secretary of the Interior must propose model criminal procedure codes for Indian tribal courts before July 1, 1968, to assure that prosecution by tribal courts of Indian offenses on Indian reservations comply with constitutional rights and privileges guaranteed under the federal constitution. Mousseaux does not explain how the actions of the defendants violate this section and no amount of liberal construction of Mousseaux's pleadings reveals a theory. Accordingly, any claims based on this statute are also dismissed.

### D. *Claims Under 18 U.S.C. §§ 241, 242, 1001, and 1018*

Mousseaux alleges that the actions of the various defendants violate the above statutes. Each statute is found in the section of the United States Code describing substantive offenses which constitute federal crimes. Section 241 makes it a crime to conspire to violate constitutional or statutory rights. Section 242 makes it a crime to willfully deprive persons of constitutional or statutory rights while acting under color of law. Section 1001 makes it a crime to falsify or conceal a material fact or to use a fraudulent or false statement while within the jurisdiction of any department or agency of the United States. Finally, section 1018 makes it a crime for a public officer to deliver a certificate or other writ-ing containing a statement known to be false by him.

Each of the above statutes specifies the punishment which may be meted out in the event the statute is violated. It is obvious that enforcement of the statutes rests with the Attorney General and the Justice Department. No private right of action is provided by any of the statutes. Therefore, this Court has no jurisdiction over Mousseaux's claims that these statutes were violated because private individuals do not have the power to bring charges for violation of the statutes.

### E. *Claims Under 18 U.S.C. §§ 3161 and 3164*

Mousseaux alleges violation of the above statutes, which are part of the Speedy Trial Act. The Speedy Trial Act applies to criminal prosecutions brought by the United States Department of Justice in federal court. Therefore, Mousseaux's claims under these statutes do not apply to the tribe or the tribal employees who were involved in the prosecution of the tribal offense in tribal court.

Although the statutes do apply to Mousseaux's prosecution in federal court for federal offenses, his claims are *res judicata*. Section 3161 provides that if the provisions of the Speedy Trial Act are violated, the criminal defendant's remedy is to request that the court dismiss the charges against him and, in some cases, punish the offending attorney with fines or a prohibition against practicing in the federal court issuing the order. 18 U.S.C. § 3161.

In his criminal prosecution in federal court, Mousseaux moved pursuant to section 3161 to have the indictment against him dismissed for violation of the Speedy Trial Act. The district court [1] issued a memorandum opinion dated January 25, 1991, in which he examined Mousseaux's arguments at length and concluded that no violation of the Speedy Trial Act had occurred. Mousseaux's remedy, if he believed this decision to be in error, was to appeal the decision of the district court, not to file a separate, civil cause of action in

---

**1.** The Honorable Donald J. Porter, United States District Judge.

this Court. The issue of whether the Speedy Trial Act was violated in Mousseaux's federal criminal prosecution is now *res judicata*. Mousseaux's claims under section 3161 are dismissed.

### F. *Claims Under 18 U.S.C. § 3164*

■ Section 3164 provides that, in federal criminal prosecutions, a high risk defendant may be held without bail. In the event this is done, a trial must be held within the stated time period in the statute before the court in which he is charged. Failure to do so results in an automatic review of the conditions under which the defendant is held. If the court does not engage in such automatic review, the defendant may seek a writ of mandamus to enforce his right to a review. 18 U.S.C. § 3164.

As with section 3161 discussed above, section 3164 applies only to Mousseaux's federal criminal prosecution and the remedy provided is intended to be exercised within the context of a criminal defendant's criminal case. No private cause of action, aside from the writ of mandamus, is provided. Mousseaux's remedy was to seek an automatic review from the district court in which his federal criminal charges were pending or, if the district court refused to comply, to seek a writ of mandamus from the Eighth Circuit. Mousseaux cannot now bring a private civil cause of action for money damages based on violation of a rule of criminal procedure. Mousseaux's claims under section 3164 are dismissed.

### G. *Claims Under 28 U.S.C. § 331 and 753*

Mousseaux invokes the above statutes without explaining how they figure into his claims. Section 331 explains the duty of the Chief Justice of the United States Supreme Court to call an annual judicial conference. Obviously, Mousseaux must have

meant to cite 28 U.S.C. § 1331, which provides that federal courts have jurisdiction over questions arising under federal statutes, treaties, and the federal constitution. Using the rule of liberal construction, this Court holds Mousseaux's invocation of section 331 to be an invocation of jurisdiction under section 1331.

■ Mousseaux also invokes 28 U.S.C. § 753. This section deals with the power and duty of district courts to appoint court reporters for their courts. One of Mousseaux's allegations against the tribal court is that it failed to provide or create a transcript of one of the hearings held on Mousseaux's tribal criminal charges. Section 753 has no application to criminal proceedings in tribal court. Mousseaux's claims under section 753 in connection with the tribal court proceedings should accordingly be dismissed.

■ If Mousseaux intended for his claim under section 753 to apply to the federal criminal proceedings against him, he has stated no facts alleging that the district court did not at all times have a court reporter appointed and present for Mousseaux's hearings. The rule of liberal construction of pro se plaintiffs' pleadings cannot extend to speculative facts which have not been stated. In addition, any violation of section 753 by the district court that Mousseaux perceives should have been raised and appealed in his criminal case, not in a subsequent civil action. Accordingly, Mousseaux's claims based on section 753 are dismissed.

### H. *Claims Under 42 U.S.C. §§ 1981, 1983 and .1985*[2]

Mousseaux invokes 42 U.S.C. §§ 1981, 1983, and 1985 as a basis for claims against the tribe, its employees, and the federal entities and individuals named as defendants. Mousseaux alleges that these de-

---

2. Mousseaux also invokes 42 U.S.C. § 1982. That statute provides that:

All citizens of the United States shall have the same right in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

42 U.S.C. § 1982. Mousseaux does not allege that the actions of any of the defendants prevented him from inheriting, purchasing, leasing, selling, holding, or conveying property to the same extent as white persons. Accordingly, his claim based on section 1982 should be dismissed.

fendants violated his fourteenth amendment[3] rights by exercising the criminal jurisdiction of the Rosebud Sioux Tribe over Mousseaux, who is not an enrolled member of that tribe. Additionally, Mousseaux seems to rely on these same statutes for his claim that the defendants intentionally discriminated against him because he was a "Pine Ridger," an Indian from the Pine Ridge Indian Reservation.[4]

1. Exercise of Criminal Jurisdiction of the Rosebud Sioux Tribe Over Mousseaux

■■■ Mousseaux relies on *Duro v. Reina,* 495 U.S. 676, 110 S.Ct. 2053, 109 L.Ed.2d 693 (1990), and *Greywater v. Joshua,* 846 F.2d 486 (8th Cir.1988), as authority that an Indian tribe cannot exercise its criminal jurisdiction over non-member Indians. The government argues that the decision in *Greywater* was not effective at the time the facts of Mousseaux's claims arose because the Secretary of the Interior had circumvented that decision by delegating his criminal jurisdiction to the tribes in the Eighth Circuit in a memo dated March 16, 1989. The government provides no documentation to prove the contents of this alleged memo and none was discovered in independent research. Nevertheless, because the holding in *Duro* was retroactive, it is unnecessary to determine the status of *Greywater* as of the date of Mousseaux's arrest.

In *Duro,* Albert Duro, an Indian, was prosecuted criminally by an Indian tribe in which Duro was not enrolled. *Duro,* 495 U.S. at 679–81, 110 S.Ct. at 2056, 109 L.Ed.2d at 700–01. The alleged criminal offense took place on the prosecuting tribe's reservation. *Id.* Alleging that the tribe's exercise of criminal jurisdiction over a non-member Indian violated the equal protection provision of the ICRA, Duro sought a writ of habeas corpus in federal district court. *Id.* at 681–82, 110 S.Ct. at 2058, 109 L.Ed.2d at 701.[5] The district court granted the writ on the grounds Duro had argued. *Id.* The Ninth Circuit reversed and was in turn reversed by the Supreme Court. *Id.* at 682–84, 110 S.Ct. at 2058–59, 109 L.Ed.2d at 702–03. The Supreme Court held that, as a matter of federal common law, Indian tribes lacked inherent criminal jurisdiction over non-member Indians. *Id.* at 684–98, 110 S.Ct. at 2059–66, 109 L.Ed.2d at 703–12.

It is clear that if *Duro* applies to the facts stated in Mousseaux's claim, he has pleaded sufficient facts to withstand the government's motions to dismiss. The crucial question is whether *Duro* applies. There are two reasons why the *Duro* holding might not apply to Mousseaux's claims: (1) because *Duro* was decided before Mousseaux's arrest and subsequent release on tribal charges, and (2) because prior to the date Mousseaux filed his complaint with this Court, Congress overruled *Duro* by passing legislation which amended the ICRA. Before delving into the questions of the retroactivity of *Duro* and of the amendments to the ICRA, it is essential to set forth the chronology of events.

---

**3.** Although the fourteenth amendment does not apply to the federal government, Mousseaux specifically invokes the due process clause of that amendment. The rule of liberal construction requires this Court to consider Mousseaux's claim to be based on the due process clause of the fifth amendment.

**4.** Although Mousseaux's father, who was 7/16 Indian, was enrolled in the Oglala Sioux Tribe on the Pine Ridge Indian Reservation, Mousseaux has never been an enrolled member of any tribe. *See* Memorandum Opinion of Judge Porter, 5–6, CR 90-30026–01 (02-06-91). Mousseaux was found to be a non-Indian for purposes of federal criminal jurisdiction in his criminal case, *id.,* but does not assert that he is a non-Indian in this civil proceeding.

**5.** Duro's equal protection argument was based in part on *Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978), in which the Supreme Court held that Indian tribes did not have criminal jurisdiction over non-Indians who committed offenses on a tribe's reservation. Duro argued that non-member Indians shared many relevant characteristics with non-Indians in that neither could vote in tribal elections or serve on juries in tribal court. Thus, Duro argued that it violated the ICRA guaranty of equal protection under the law to treat two such similarly situated groups of individuals differently. *Duro,* 495 U.S. at 681–82, 110 S.Ct. at 2058, 109 L.Ed.2d at 701.

### 1990

—February 25, Mousseaux was arrested by Bureau of Indian Affairs officials on tribal charges

—April 24, the tribal charges against Mousseaux were dismissed and he was released from tribal jail

—May 29, the Supreme Court decided *Duro*

—October 24, emergency legislation was passed amending the Indian Civil Rights Act, 25 U.S.C. § 1301(2) and (3), and legislatively overruling the Supreme Court's holding in *Duro*. This temporary legislation was later replaced with identical permanent legislation on October 28, 1991.

### 1991

—February 6, Mousseaux filed his claim with this court

Having this chain of events in mind, the issues of the retroactivity of the *Duro* decision and of the subsequent legislation can now be considered.

### a. *Retroactivity of the Duro decision*

The Eighth Circuit recently addressed the issue of when a decision of a court should be retroactively applied to a case, the facts of which arose before the decision was rendered. The court held that where the decision announcing the new rule of civil law applied that rule to the litigants in that case, the new rule should be given full retroactive effect. *See United States v. Goodner Bros. Aircraft, Inc.,* 966 F.2d 380, 384–85 (8th Cir.1992) (holding a decision of the District of Columbia Circuit invalidating an EPA regulation to have full retroactive effect).

The Eighth Circuit cited for authority another recent case, *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). In *James B. Beam,* a majority of Justices

agreed that a prior decision rendered by the Supreme Court should be applied to facts which arose before the decision in question was announced. Justice Souter wrote the decision for the Court in which Justice Stevens joined. Justice Souter wrote that where the case which announces the new rule applies the rule retroactively to the parties to that case, principles of equity and *stare decisis* require retroactive application of the rule to all cases. *Id.* at ——, 111 S.Ct. at 2446, 115 L.Ed.2d at 491. However, retroactive application does not nullify the effect of statutes of limitation or of *res judicata. Id.* The Court's opinion did not overrule the case of *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), which held that a decision may only be applied prospectively under some circumstances. However, apparently *Chevron Oil Co.* would only have application where the decision announcing the rule did not apply that rule to the litigants in that case. This last point was the focus of Justice White's lone concurring opinion. *Id.* at ——, 111 S.Ct. at 2448–49, 115 L.Ed.2d at 494–95 (White, J., concurring).

Justices Blackmun, Scalia and Marshall concurred in the opinion written by Justice Souter, but they maintained that the Constitution requires the Court to give full retroactive effect to all of its decisions. *See Id.* at ——, 111 S.Ct. at 2449–2450, 115 L.Ed.2d at 495–96 (Marshall, J., concurring); and *Id.* at ——, 111 S.Ct. at 2450–51, 115 L.Ed.2d at 497 (Scalia, J., concurring).[6] Neither Justice Marshall nor Justice Scalia mentioned *Chevron Oil, Co.* in their concurring opinions.[7]

Under the decision in *James B. Beam,* if the *Duro* Court applied its holding to the litigants in that case, then the decision in *Duro* must be given full retroactive effect. A reading of the *Duro* decision from the Supreme Court, and of the decision of the

---

**6.** Justices Scalia and Blackmun joined in Justice Marshall's concurring opinion and Justices Blackmun and Marshall joined in Justice Scalia's concurring opinion. Justice Blackmun did not write separately.

**7.** Justices O'Connor, Kennedy and Rehnquist dissented, stating that the *Chevron Oil, Co.* analysis should always apply when the issue of whether a decision should have retroactive effect is presented. *Id.* at ——, 111 S.Ct. at 2451–56, 115 L.Ed.2d at 497–503 (O'Connor, J., dissenting).

Ninth Circuit upon remand, makes it clear that the rule announced in *Duro* was applied to the litigants in that case. See *Duro*, 495 U.S. at 684, 698, 110 S.Ct. at 2059, 2066, 109 L.Ed.2d at 712; and *Duro v. Reina*, 910 F.2d 673, 674 (9th Cir.1990). Accordingly, this Court must apply *Duro* retroactively to Mousseaux's claims.

However, the conclusion that *Duro* is to apply retroactively does not end the inquiry. If the legislation overruling *Duro* also applies retroactively, then Mousseaux's claim cannot stand.

### b. *Retroactivity of the Amendments to the ICRA*

The Eighth Circuit recently addressed the issue of whether legislation should be given retroactive effect in *Fray v. Omaha World Herald Co.*, 960 F.2d 1370 (8th Cir. 1992). In *Fray*, the court noted at the outset of its analysis that until 1969, it was a long-standing jurisprudential principle that legislation could not be given retroactive effect unless the legislature specifically so provided. *Id.* at 1374. However, in 1969 and in 1974, the Supreme Court undermined this doctrine by holding in two cases that the rule, rather than the exception, was to give a statute retroactive effect unless to do so would result in manifest injustice or unless the legislature has specifically decreed otherwise. *Id.* (citing *Bradley v. Richmond School Bd.*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); and *Thorpe v. Housing Auth. of the City of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969)). The Court noted that cases subsequent to *Bradley* have reverted to the traditional principle without overruling *Bradley* or *Thorpe*. *Id.* (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988)). Thus, the Eighth Circuit acknowledged that its task was to try to reconcile two appar-

ently conflicting lines of authority. *Id.* at 1375.

Although expressing favor for the traditional principle, the Eighth Circuit did not choose between the two. *Id.* Instead, the court noted that the two doctrines share common ground: where the will of the legislature is clear as to retroactivity, that legislative intent must be obeyed. *Id.* Delving into the legislative history of the statute in question (section 101 of the Civil Rights Act of 1991), the court found that congressional intent that the statute not be given retroactive effect was clear. *Id.* at 1375–79. Thus, under both the traditional principle and under the *Bradley* and *Thorpe* rules, the court held that the statute could not be given retroactive effect. *Id.*[8]

The analysis of the *Fray* decision requires this Court to examine the legislative history of the amendments to the ICRA. If the legislative intent is clear regarding retroactivity, then this Court must apply that intent.

On November 5, 1990, amendments to the Indian Civil Rights Act (ICRA) became effective which overruled the Supreme Court decision in *Duro*. Department of Defense Appropriations Act, Pub.L. No. 101–511, § 8077(b)–(d), 104 Stat. 1856, 1892–93 (1990) (codified at 25 U.S.C. § 1301(2), (4)). These were passed as emergency measures and expired on September 30, 1991. *Id.* A House Conference Report explains that the amendments "recognize and affirm the inherent power of tribes to exercise criminal misdemeanor jurisdiction over all Indians on their respective reservations" and that the amendments were consistent with "two hundred years of Federal law." H.R.Conf.Rep. No. 938, 101st Cong., 1st Sess. 233 (1990).

On October 28, 1991,[9] the emergency amendments passed the year before were

---

**8.** Judge Heaney dissented. He found the legislative history of the statute to be clear in only one respect: that Congress had specifically decided to leave the issue of retroactivity for the courts to decide. Thus, Judge Heaney stated that the court's task was to try to reconcile *Bradley* and *Georgetown* as much as possible. Judge Heaney did this by applying fairness tests garnered from both lines of authority. The

result, Judge Heaney concluded, was that it was fair to give the statute retroactive effect. *See Fray*, 960 F.2d at 1379–83 (Heaney, J., dissenting).

**9.** A separate measure was passed extending the deadline of the 1990 amendments to October 18, 1991. Because the 1991 legislation did not become effective until October 28, 1991, there was

adopted as permanent amendments, so that the permanent amendments were identical to the temporary amendments, with the exception of the sunset provision whereby the amendments would expire on September 30, 1991. Criminal Jurisdiction Over Indians, Pub.L. No. 102–137, § 1, 105 Stat. 646 (1991) (codified at 25 U.S.C. § 1301(2), (4)). The text of 25 U.S.C. § 1301 presently appears as follows, with the underlined portions representing the amendments passed in 1990 and 1991:

> For purposes of this subchapter, the term—
>
> (1) "Indian tribe" means any tribe, band or other group of Indians subject to the jurisdiction of the United States and recognized as possessing powers of self-government;
>
> (2) "powers of self-government" means and includes all governmental powers possessed by an Indian tribe, executive, legislative, and judicial, and all offices, bodies, and tribunals by and through which they are executed, including courts of Indian offenses; and *means the inherent power of Indian tribes, hereby recognized and affirmed, to exercise criminal jurisdiction over all Indians;*
>
> (3) "Indian court" means any Indian tribal court or court of Indian offense;
>
> (4) *"Indian" means any person who would be subject to the jurisdiction of the United States as an Indian under section 1153, title 18, United States Code, if that person were to commit an offense listed in that section in Indian country to which that section applies.*

25 U.S.C. § 1301. For a time the House of Representatives and the Senate were in disagreement regarding the 1991 legislation. The House wanted to make the 1990 amendments permanent, while the Senate wanted to extend the 1990 amendments until 1993, pending a comprehensive inquiry into the status and abilities of Indian tribal courts. *Compare* S.R.Rep. 153, 102d

Cong., 1st Sess. (1991); *with* H.R.Rep. No. 61, 102d Cong., 1st Sess. (1991), *reprinted in* 1991 U.S.C.C.A.N. 370. A compromise was reached whereby the Senate agreed to make the 1990 amendments permanent if the House would agree to investigate the status of the tribal court systems and consider future legislation in that vein. 137 Cong.Rec. S14930–03 (statements of Sen. Mitchell). There was never any dispute regarding the substance of the amendments or their purpose in overruling *Duro.*

Regarding the retroactive effect of the amendments to section 1301, the legislative history reveals a novel approach. The various reports and speeches made in connection with this legislation show a clear intent that:

1. the amendments were intended to nullify *Duro,*

2. the amendments were not a new delegation of power to tribal courts from the Congress, and

3. the amendments were a recognition of the inherent criminal jurisdiction of tribal courts over non-member Indians, which jurisdiction had always existed and which continued uninterrupted, despite the *Duro* decision.

*See* S.Rep. No. 168, 102d Cong., 1st Sess. (1991) (stating that "if Congress had intended to divest Indian tribal governments of jurisdiction over non-Indians, it would have explicitly done so. Instead, the assumption in Congress has always been that tribal governments do have such jurisdiction, and Federal statutes reflect this view" and that the amendments were intended to "recognize and reaffirm the inherent authority of tribal governments to exercise criminal jurisdiction over all Indians"); H.R.Rep. No. 61, 102d Cong., 1st Sess. 1, 7 (1991) *reprinted in* 1991 U.S.C.C.A.N. 370, 370, 376–77 (stating that the purpose of the amendments was to "recognize and affirm the power of Indian tribes to exercise misdemeanor criminal jurisdiction over all Indians" and that the legislature "notes that tribes have retained the criminal jurisdic-

---

a gap between the date the 1990 amendments expired and the date the 1991 amendments became effective.

tion over non-member Indians and this legislation is not a federal delegation of this jurisdiction but a clarification of the status of tribes as domestic dependent nations"); H.R.Conf.Rep. No. 261, 102d Cong., 2d Sess. 3 (1991) *reprinted in* 1991 U.S.C.C.A.N. 379 (stating that the "legislation clarifies and reaffirms the inherent authority of tribal governments to exercise criminal jurisdiction over all Indians on their reservations"); 137 Cong.Rec. H2988–02 (statement of Rep. Geo. Miller of California) (stating that "this bill recognizes an inherent tribal right which always existed. It is not a delegation of authority but an affirmation that tribes retain all rights not expressly taken away. Since Congress never took this jurisdiction away, we assert that the jurisdiction exists and must be recognized"); 137 Cong.Rec. H2988–02 (report on H.R. 972) (stating that the amendments seek "to assure Indian tribes of their jurisdiction over misdemeanor crimes committed on their lands by Indians who are not members of their tribe. The Committee is clarifying an inherent right which tribal governments have always held and was never questioned"); and 137 Cong.Rec. E2165–04 (statement of Rep. Geo. Miller of California) (stating that "we make these corrections to make clear the committee's acknowledgment of the fact that tribes—first, have always been able to exercise misdemeanor criminal jurisdiction over all Indians on tribal lands; second, that Congress never took the jurisdiction away; and third, that tribes clearly retain this jurisdiction as self-governing entities and as keepers of the peace on their homelands").

Clearly, Congress wants interpreters of the amendments to section 1301 to engage in a legal fiction: to pretend *Duro* was never decided. Congress could have accomplished the same result by stating that the legislation was to be given retroactive effect, but it chose not to do so. Under the mandates of *Bradley, Georgetown Hosp.,* and *Fray,* this Court must give effect to the clearly expressed intent of Congress. Therefore, this Court will engage in the legal fiction Congress intended and view the amendments as nullifying *Duro* and reinstating the criminal jurisdiction of Indi-

an tribes over non-member Indians so that it forms an unbroken line, extending back into history. Because the amendments to section 1301 must be given retroactive effect, they serve to defeat Mousseaux's claims based on *Duro* and these claims are accordingly dismissed.

2. Intentional Discrimination Against Mousseaux

 Mousseaux also relies on 42 U.S.C. §§ 1981, 1983, and 1985 for his allegations that the defendants intentionally discriminated against him because he was not a member of the Rosebud Sioux Tribe. Mousseaux's claims of intentional discrimination must fail because he has failed to allege facts which would support his claim. *See Snelling v. Westhoff,* 972 F.2d 199, 200–01 (8th Cir.1992) (per curiam). He states that the Bureau of Indian Affairs officials and Rosebud tribal employees treated him differently because he was not a member of the Rosebud Sioux Tribe, but Mousseaux also states that his captors believed him to be lying about the fact that he was not a member of the Rosebud Sioux Tribe. Mousseaux Complaint at A–3, A–6–7. If the defendants believed Mousseaux to be a member of the Rosebud tribe, as Mousseaux himself states, then the defendants cannot have been intentionally discriminating against Mousseaux because he was a "Pine Ridger." Mousseaux's claims based on intentional discrimination must be dismissed for failure to state a claim.

If the rule of liberal construction requires this Court to view Mousseaux's factual allegations as stating a cause of action in tort for false arrest and false imprisonment, then such tort claims are dismissed for lack of subject matter jurisdiction. Mousseaux failed to file an administrative claim with the appropriate federal agency as required by 28 U.S.C. § 2675. Failure to comply with this statute is a jurisdictional prerequisite.

### CONCLUSION

All of Mousseaux's claims are dismissed on the grounds and for the reasons discussed above. Judgment for the defen-

dants is rendered in the order issued this same day.