19 Ill. App.3d 509 (1974)
311 N.E.2d 722
THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Petitioner-Appellant,
v.
MARGIE C. GUERINE et al., Defendants  (FRANK ALAMPRESE et al., Defendants-Appellees.)
No. 72-324.
Illinois Appellate Court  Second District.
May 21, 1974.
John W. Damisch, Anthony M. Peccarelli, and Loretta C. Didzerekis, all of Barclay, Damisch & Sinson, and William J. Scott, Attorney General, both of Chicago, for appellant.
Foran, Wise & Schultz, of Chicago, for appellees.
Judgment affirmed.
*510 Mr. JUSTICE GUILD delivered the opinion of the court:
Petitioner, Department of Public Works and Buildings, filed this condemnation proceeding to acquire certain property in an unincorporated area of Du Page County. The circuit court of Du Page County entered a judgment upon a jury verdict. Petitioner appeals from that judgment and from the trial judge's order denying the post trial motion to set aside the verdict and for a new trial.
Several issues have been presented for our determination. Firstly, whether it is proper for a condemning authority to call an expert appraisal witness to testify and to impart to the jury the fact that the witness had previously been employed by the property owners' attorney to appraise the subject property, and thereby implicitly reveal that the owners did not intend to call that appraisal witness as their witness. Secondly, whether a remark made by defendants' attorney during trial was prejudicial to the petitioner. And thirdly, whether the trial judge erred in refusing to instruct the jury with one of petitioner's tendered instructions.
Defendants' property is located along the south side of Lake Street (U.S. Route 20) and has a 260-foot frontage and a 150-foot depth. The easterly half of the property is improved with a brick industrial type building which was used for the sale and rental of heavy construction equipment. The westerly half of the property is vacant. For the purpose of widening Lake Street (U.S. Route 20), petitioner condemned a rectangular strip of defendants' property, designated as Parcel 23, consisting of a 260-foot frontage along Lake Street with a depth of 18 feet.
Petitioner's condemnation petition was filed on April 21, 1971, pursuant to section 4-501 of the Illinois Highway Code. (Ill. Rev. Stat. 1969, ch. 121, par. 4-501.) Upon petitioner's motion for immediate vesting of title under the quick-take provisions of the Eminent Domain Act (Ill. Rev. Stat. 1973, ch. 47, par. 2.1), an order was entered which preliminarily determined the just compensation for the acquisition of defendants' property to be $8,100. Thereafter defendants filed a cross petition wherein they sought damages for the alleged diminution in the value of the remainder of their property caused by the taking.
Prior to trial, defendants moved to divide and redesignate Parcel 23 into two parcels. Defendants argued that this was necessary because the evidence would illustrate that the highest and best use of the vacant westerly half of their property was for service station use, and that its value was greater than that of the easterly half. Accordingly, the court divided and redesignated the condemned 260-foot-by-18-foot strip as follows: Parcel 23 being the easterly 130 feet of the condemned strip, and Parcel 23 A being the westerly 130 feet of the strip.
*511 The only issue at trial was the determination of the amount of just compensation due defendants for that portion of their property which was taken (Parcels 23 and 23A), and for the damage caused to the remainder of their property as a result of this taking. To establish these monetary amounts, defendants elicited testimony from three expert appraisers, in addition to two witnesses who testified as to comparable sales. Defendants' three appraisal witnesses valued Parcel 23 from a low of $5000 to a high of $5300; and they valued the damage caused to the remainder of defendants' property as a result of this taking from a low of $0 to a high of $8700. As to Parcel 23A, defendants' appraisal witnesses valued it from a low of $7600 to a high of $9100; and their testimony as to the damage caused to the remainder of defendants' property as a result of this taking ranged from a low of $14,100 to a high of $17,300.
Petitioner then introduced two expert appraisal witnesses who valued just compensation for Parcel 23 at $3500 and $4600; and they estimated the damage to the remainder of defendants' property as a result of this taking at $5500 and $0. These same appraisers value just compensation for the taking of Parcel 23A at $6400 and $3500. Both testified that there was no damage caused to the remainder of defendants' property as a result of this taking.
The jury found that the just compensation due defendants for the taking of Parcel 23 to be $4600, with $4500 due defendants for the damage caused to the remainder of their property as a result of petitioner's acquisition of Parcel 23. The jury also established just compensation for the taking of Parcel 23A to be $7600, and awarded $5000 to defendants for the damage caused to the remainder of their property as a result of petitioner's taking of Parcel 23A.
One of the expert appraisers called by petitioner was James Dunn who had previously been hired by defendants' attorney to appraise the subject property for the condemnation case. Prior to trial, however, defendants decided not to call Dunn in their behalf. Pursuant to defendants' motion in limine, the trial judge ruled that petitioner's attorney could not reveal to the jury that Dunn had previously been hired by defendants' attorney to appraise the property. The judge further ruled that petitioner's attorney could reveal, on direct examination of Dunn, that neither he nor the Department of Public Works and Buildings had ever hired Dunn to appraise the subject property, and could further reveal that the witness had been called to testify on behalf of the petitioner pursuant to a subpoena. Faced with this ruling, petitioner made an offer of proof, to which defendants' attorney stipulated, as to Dunn's previous employment relationship with defendants' attorney for the purposes of appraisal and consultation.
*512 Petitioner contends that the trial judge erred in not allowing its trial counsel to reveal to the jury the fact that witness Dunn had previously been employed by defendant's attorney to appraise the subject property. Essentially petitioner argues that this fact is "both relevant and probative" in that it illustrates the "bias" of those expert appraisal witnesses actually utilized by defendants at trial.
Although this question has never before been directly presented to an Illinois court of review, this court has had an opportunity to briefly discuss this question, without deciding it. In Department of Business & Economic Development v. Schoppe (1971), 1 Ill. App.3d 313, 272 N.E.2d 696, we held that the fact that an expert appraisal witness had previously been employed by the landowners to appraise their property did not prevent the condemning authority from utilizing that expert appraiser as a witness in its behalf at trial. However, although not essential to its holding, this court stated that the condemning authority would not have been able to introduce the expert appraiser as a former appraiser of the land owners "because such would have no relevancy to the issues to be decided." 1 Ill. App.3d at 317, 272 N.E.2d at 699.
Since this question has now been directly presented we feel compelled to reconsider and expand upon what we said in Schoppe. The propriety of revealing to the jury the fact that a party to a condemnation case has not called one of the persons as a witness whom he had previously hired to appraise the subject property has been specifically decided by several jurisdictions, with a resulting split in authority.
In Arkansas State Highway Com. v. Phillips (1972), 252 Ark. 206, 478 S.W.2d 27, the majority of the Arkansas Supreme Court approved the trial judge's ruling which permitted the landowner to call as an appraisal witness a staff appraiser employed by the condemning authority; and to show through that witness's testimony that he had made an appraisal of the subject property for the condemning authority but was not being called as a witness in its behalf. In so holding, the Phillips court stated, "We can see no sound reason why the evidence as to failure of a party to produce an expert consulted by him cannot be shown by the witness rather than through the party himself or from other witness called by the party." (252 Ark. at 219, 478 S.W.2d at 33.) This holding of the Phillips court was premised on the general principle that evidence of a party's conduct in failing to call a witness which would generally be favorable to him is admissible as an admission by a party opponent.
However, the majority of the jurisdictions that have considered this question have reached a contrary result. (State v. Biggers (Tex. 1962), 360 S.W.2d 516; State v. Washington Horse Breeders Association (1964), 64 Wash.2d 756, 394 P.2d 218; State Highway Com. v. Earl (1966), 82 *513 S.D. 139, 143 N.W.2d 88; Boyles v. Houston Lighting & Power Co. (Tex. 1971), 464 S.W.2d 359.) In these cases the question is treated as one of relevancy. In each of these cases the courts recited, without extended discussion, that the fact of an expert appraisal witness' prior employment by one of the parties to a condemnation case is not relevant to the issues in such cases. We too believe that this question should properly be determined within the framework of relevancy concepts.
The reasons are speculative at best why one party to a condemnation case may decide not to call as an expert witness one whom he had previously hired to appraise the subject property. Assuming, however, as petitioner contends, that one of those reasons may be that the appraiser's dollar valuation of the property was not in line with the figure the land owner (or condemning authority) had in mind, then the fact of prior employment would arguably have some probative value to the issue of just compensation. Theoretically, this fact would render the desired inference (i.e., that the values placed upon the property by the party's witnesses who actually testified are not accurate) more probable than such inference would be without introduction of this fact.
 1 Relevance, however, is not always enough to warrant admission of evidence. In this case the judge's refusal to admit testimony as to Dunn's prior employment relationship with defendants' attorney was proper for two reasons: Firstly, introduction of this fact would certainly arouse the jury's emotions of prejudice. (Arkansas State Highway Authority v. Phillips (1972), 252 Ark. 206, 478 S.W.2d 27, 34 (dissenting opinion); cf. The Department of Business & Economic Development v. Baumann (1972), 9 Ill. App.3d 1, 291 N.E.2d 213, reversed on other grounds (1974), 56 Ill.2d 382, 308 N.E.2d 580.) And secondly, by allowing petitioner to reveal to the jury evidence of Dunn's prior employment relationship, the landowners would then necessarily have the opportunity to explain why they did not call Dunn to testify as to his appraisal. (II Wigmore on Evidence (3rd Ed. 1940), page 162, section 285.) This would result in the creation of a collateral issue that would unduly distract the jury from the main issue of determining just compensation.
Similarly, it is an established rule in the law of eminent domain that the fact that one of the testifying witnesses has been appointed by the court to appraise the subject property should not be revealed to the jury. (Department of Public Works & Buildings v. First National Bank (1965), 61 Ill. App.2d 78, 82, 209 N.E.2d 21; cf. Department of Business and Economic Development v. Baumann (1972), 9 Ill. App.3d 1, 291 N.E.2d 213, reversed on other grounds (1974), 56 Ill.2d 382, 308 N.E.2d 580.) Therefore, although there may arguably be some probative value in the admission into evidence of testimony of an expert appraisal witness' *514 prior employment relationship with one of the parties to the condemnation proceeding, this value is outweighed by the evidentiary counterfactors of prejudice and creation of collateral issues. For this reason the evidence was properly precluded from the jury.
Petitioner's second contention, that a remark made by defendants' attorney in the presence of the jury was prejudicial, must be discussed within the perspective of the events which occurred during the trial. Before witness Dunn took the stand, petitioner's attorney revealed that Dunn was going to testify both as to his appraisal of the subject property and as to comparable sales in the area. The attorneys for each party then agreed, for the purpose of order, that Dunn would complete the direct and cross-examination on his valuation testimony prior to testifying as to the comparable sale. Accordingly, after petitioner's attorney completed his redirect examination of Dunn with respect to his appraisal of the subject property, but before proceeding to examine him as to the comparable sale, the following took place:
Petitioner's Attorney: "I have nothing further on these issues, your Honor."
The Court: "Right, I understand that. All right, now you may proceed on the other line of questioning as to  "
Petitioner's Attorney: "That's Mr. Casey's  "
The Court: "Let's see. No, its his line of questioning."
Defendants' Attorney: "Yes, it's his witness, Judge."

The Court: "All right." (Emphasis added.)
Petitioner's attorney then immediately argued that the above italicized statement by defendant's attorney was prejudicial to petitioner's case and moved for a mistrial. In the alternative, petitioner urged the trial judge to admonish the jury that Dunn was "* * * not my witness." The trial judge, out of the presence of the jury, denied petitioner's motion for a mistrial and further ruled that no curative instruction to the jury was necessary. He based this ruling on the fact that the witness Dunn had already testified that he was present in court pursuant to being served with a subpoena, and furthermore had already testified that he had never been hired by petition or its attorney for the purpose of appraising the subject property. The court concluded:
"I think what happened is perhaps unfortunate and a genuine and honest confusion [sic] rather than an attempt to mislead anybody. * * * I don't feel personally that there has been prejudice to the Department.
* * *
* * * I frankly feel that there would be more problems created by any instructions at this point."
*515  2 Petitioner has relied on the cases of Clarke v. Rochford (1967), 79 Ill. App.2d 336, 224 N.E.2d 679; Gordon v. Checker Taxi Co. (1948), 334 Ill. App. 313, 79 N.E.2d 632; and Delach v. Schuberth (1942), 316 Ill. App. 452, 45 N.E.2d 198 (abstract opinion), in support of its contention that this remark by defendant's attorney was prejudicial and was thus ground for reversal. The factual situations in these cases, however, are clearly distinguishable from the facts in the case before us. From our reading of the record, we do not believe the ruling on this issue entailed an abuse of the trial judge's discretion. The statement by the defendant's attorney merely indicated that the witness Dunn was petitioner's "witness" for the purpose of proceeding with the direct examination as to the comparable sale.
Finally, petitioner argues that the trial judge erroneously refused petitioner's tendered non-I.P.I. instruction #8, while at the same time giving defendant's tendered instruction #10 (I.P.I. 300.84). Petitioner's refused instruction #8 reads:
"In considering the compensation to be paid to the defendants for the lands and premises which have been taken, you are to fix the actual cash market value of the premises taken. In arriving at such compensation, you are not to consider the price which the property may be sold for under special or extraordinary circumstances but its fair cash market value, if sold in the market, under ordinary circumstances."
and defendant's instruction #10 which was given reads as follows:
"When I use the expression `Highest and Best' use of property I mean that use which would give the property its highest cash market value on April 21, 1970. [This may be the actual use of the property on that date or a use to which it was then adaptable and which could be anticipated with such reasonable certainty that it would enhance the market value on that date.]"
Petitioner further contends that the trial court erred in refusing to give the above instruction with the bracketed portion omitted therefrom as petitioner's instruction. The error according to petitioner is that by so instructing the jury, the trial judge "* * * in essence decided for the jury that Parcel 23A should be considered adaptable for a gas station, and that such a use should not be considered speculative." We are not in agreement with this contention. First, the record includes sufficient testimony relating to the present adaptability of Parcel 23A for service station use to warrant inclusion of the bracketed language contained in instruction #10. Second, petitioner's instruction #8 is not found in Illinois Pattern Jury Instructions, Civil (2d ed. 1971). Furthermore, the proper criterion for determining value was correctly given to the jury *516 In petitioner's instructions #13 (I.P.I. 300.80) which explains just compensation, and in #11 (I.P.I. 300.81) which defines fair cash market value. Finally, the apparent purpose of petitioner's refused instruction #8 was to advise the jury not to consider any "special or extraordinary circumstances" when it determined the just compensation for Parcel 23A and the damages resulting to the remainder of defendants' property as a result of this taking. Essentially, the language of this portion of refused instruction #8 is contained in the bracketed portion of instruction #10 which was given to the jury. That instruction refers to a use to which the parcel was presently adaptable and "which could be anticipated with reasonable certainty." (Emphasis added.)
 3 Unquestionably the above italicized portion of instruction #10 excludes any implication that the jury could consider speculative issues when it determined the amount of just compensation and damages due the defendants as a result of the taking of Parcel 23 A. Therefore, since petitioner's refused instructions contained essentially the same principles of law that were contained in the given instructions #10, 11, and 13, all of which are I.P.I. and correctly state the law, the trial judge properly refused petitioner's instruction #8. Supreme Court Rule 239(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 239(a)); City of Chicago v. Provus (1953), 415 Ill. 618, 114 N.E.2d 793.
For these reasons the judgment of the trial court is affirmed.
Affirmed.
T. MORAN, P.J., and SEIDENFELD, J., concur.