RAPID CITY, Appellant v. BARON et ux, Respondents

(227 N.W.2d 617)

(File No. 11414. Opinion filed April 4, 1975)

Horace R. Jackson and Gene N. Lebrun, Lynn, Jackson, Shultz, Ireland & Lebrun, Rapid City, for petitioner and appellant.

George A. Bangs, Joseph M. Butler and Allen G. Nelson, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendants and respondents.

MILLER, Circuit Judge.

This is an appeal from a judgment in a condemnation action wherein the defendants-respondents (Barons) were awarded the sum of $91,791.

Every South Dakotan and most Americans will recall the devastating flood which hit Rapid City on the night of June 9-10, 1972, in which over 240 persons lost their lives and hundreds of homes and business places were destroyed or otherwise damaged. Because of that catastrophe the city entered into a federally funded urban renewal program to acquire by condemnation the flood plain of Rapid Creek as it traverses the city, in an attempt to protect the public from future possible flooding.

Under the authority of SDCL 5-2-18 and the provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (P.L. 91-646) the city as condemnor commenced acquiring some 1,300 parcels of property, including that of the Barons.

Among several appraisers contracted with by the city to appraise several hundred parcels in the condemnation project * were John Cunningham and Homer Akins. Their appraisals of the Baron property were rejected by the city. Rather, the city chose to make an offer of purchase based upon the lower appraisal of another person, which appraisal was in turn rejected by the Barons.

During the trial, the court rejected certain preliminary motions and objections, and allowed the Barons not only to introduce the video-taped depositions of Cunningham and Akins, but also to identify them as appraisers employed by the city. This was done in the depositions as well as in the opening statements and final arguments of Barons' counsel.

The introductory paragraph of § 4651, 42 U.S.C.A., contains language that one of the purposes of the act is "to assure consistent treatment for owners in the many Federal programs * * *." The case was tried on the theory that such policy was binding in the action and, as a result, the court allowed the Barons to place in evidence acquisition prices of other parcels near their property which had been previously acquired by the city through the urban renewal project. Further, the court permitted a jury view of the premises, which the city urges was an abuse of discretion, especially under the circumstances where the court had permitted the Barons to introduce evidence comparing their real estate with nearby property previously acquired in the program.

By its Instruction 7 the court appropriately instructed the jury as to the definition of fair market value (Civil Pattern Jury Instruction 141.06); however, Instruction 7A stated that:

---

* Akins was still under contract and making additional appraisals at the time of his deposition.

"The Federal Government has contributed the funds for the Urban Renewal Program. One of the policies of the government is to assure consistent treatment of all persons whose property is being taken for public purposes. The Court has admitted into evidence acquisition prices paid by the city to other owners in the area for your consideration in determining the fair and just compensation due the Barons in connection with the taking of their property. You should take this evidence into account along with all the other evidence in determining the fair market value of the Baron property."

On this appeal the city has made ten assignments of error. For the purposes of this opinion we have combined the related assignments. The issues raised are: whether the testimony of Cunningham and Akins was privileged and was part of the work product of the city; if such testimony was not privileged, whether it was error to allow them to be identified as appraisers or former appraisers of the city; whether it was error for the court to allow into evidence the identification of other parcels near the Barons' property that had been previously acquired by the city in the project; whether the court abused its discretion in allowing a jury view of the premises; whether the court erred in allowing the Barons' counsel to suggest to the jury that the just compensation due them was something other than fair market value as previously defined by this court; and whether Instruction 7A was appropriate.

We believe that the trial court properly allowed the Barons to offer the testimony of appraisers Cunningham and Akins. It is settled law in this state that in condemnation actions an appraiser for the other party may be called upon to testify. The fact that he had been, or was at the time, under contract to the city to appraise the property "did not create a contractual or proprietary right" in either the city or the expert "to suppress or withhold from evidence this expert's formed opinion." State Highway Commission v. Earl, 82 S.D. 139, 143 N.W.2d 88.

However, as was held in the Earl case, "The party calling such expert makes him his witness, therefore, the fact of prior employment or payment by the opposite party is not relevant or

material." We see little or no probative value in the admission of such evidence, but if any value exists it is "outweighed by the evidentiary counterfactors of prejudice and creation of collateral issues." Department of Public Works & Buildings v. Guerine, 19 Ill.App.3d 509, 311 N.E.2d 722, 725-6.

■ We recognize that evidence of previous employment may inadvertently develop during the process of laying appropriate foundation on direct examination or on cross-examination. In this case, however, the allowance of such comment in opening statements of counsel and in direct examination created the possibilities of prejudice and collateral issues immediately, and as a result tainted the proceeding ab initio. The trial court erred in allowing such conduct and testimony.

The remaining questions in this appeal require one principal determination, that is, whether a policy statement taken out of context from a federal act under which funds are furnished to a South Dakota municipality for urban renewal purposes should be a controlling factor in putting aside our traditional condemnation laws as they apply to a determination of just compensation and fair market value.

Authority for the urban renewal project of the city in this case was enacted by our 1972 legislature. Chapter 136 of the 1972 Session Laws, now codified as SDCL 5-2-18, provides:

> "Notwithstanding any other law, the state of South Dakota, its departments, agencies, instrumentalities or any political subdivisions are authorized to provide relocation benefits and assistance to persons, businesses, and farm operations displaced as the result of the acquisition of land or rehabilitation or demolition of structures in connection with federally assisted projects to the same extent and for the same purposes as provided for in the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (P.L. 91-646), and to comply with all the acquisition policies contained in said federal act."

Further, as is heretofore stated in this opinion, one of the stated purposes of the act referred to in SDCL 5-2-18 is "to assure

consistent treatment for owners in the many Federal programs * * *." 42 U.S.C.A. § 4651.

It must not be forgotten, however, that the South Dakota Constitution is the body of law authorizing the exercise of eminent domain. Article VI, § 13 provides in part as follows:

> "Private property shall not be taken for public use, or damaged, *without just compensation*, which will be determined according to legal procedure established by the Legislature and according to § 6 of this article." (emphasis supplied)

Further, Article XVII, § 18 provides in part as follows:

> "Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make *just compensation* for property taken, injured or destroyed, by the construction or enlargement of their works, highways or improvements, which compensation shall be paid or secured before such taking, injury or destruction." (emphasis supplied)

Pursuant to such constitutional provisions, the legislature enacted what is now codified as SDCL Chapter 21-35. SDCL 21-35-1 provides that the petition be filed in circuit court praying for "just compensation" for the property. SDCL 21-35-15 provides that the only issue to be tried by the jury is the amount of compensation.

It has been consistently held by this court that the term "just compensation" as provided for in our Constitution and in SDCL 21-35-1 is the full market value of the property at the time of taking. It has further been consistently held by this court that "market value" is the highest price for which property considered at its best and most profitable use can be sold in the open market by a willing seller to a willing buyer, neither acting under compulsion and both exercising reasonable judgment. State Highway Commission v. American Memorial Parks, 82 S.D. 231, 144 N.W.2d 25; City of Huron v. Jelgerhuis, 77 S.D. 600, 97 N.W.2d 314.

■ The prices paid for other property by the city as part of its urban renewal program in the flood plain were immaterial and ·irrelevant to the issue of the "just compensation"' of the Barons for the property being taken from them. Accordingly, evidence as to the value of such other property should have been excluded and the trial court erred in not so doing.

It therefore follows that the court should not have given Instruction 7A, nor should it have allowed argument by counsel as to the values of other property.

SDCL 21-35-16 makes a viewing of the premises by the jury discretionary with the court. In view of the ruling herein we do not have to reach the issue as to whether or not the trial court abused its discretion in allowing the viewing by the jury.

■ We find no compelling reason to hold that the quoted phrase from § 4651, 42 U.S.C.A., even when read in conjunction with SDCL 5-2-18, in any manner modifies our Constitution, statutes or case law. We so say, mindful of the fact that the money being utilized in this project is that of the federal government rather than funds of the City of Rapid City. Although the trial court tried the case with the view that the city must give consistent treatment to all landowners and allow evidence of other conveyances to the condemnor to guide the jury in determining the value of the Barons' property by considering the consistency of their treatment as compared to other condemnees, we regard this as error. There is no requirement in our Constitution or in the condemnation laws of this state that parties "be treated consistently." As we have consistently held in the past, the issue is whether or not the condemnee is receiving "just compensation" through fair market value as heretofore defined.

The judgment of the trial court is reversed and set aside and the case is remanded for further proceedings.

All the Justices concur.

MILLER, Circuit Judge, sitting for DOYLE, Justice, disqualified.