**Roscoe PRIMEAUX, Petitioner and Appellant.**

v.

**Walter LEAPLEY, Warden, South Dakota State Penitentiary, Appellee.**

**No. 17889.**

Supreme Court of South Dakota.

Argued Nov. 18, 1992.

Decided June 23, 1993.

Lee A. Tappe, Platte, for petitioner and appellant.

Mark Barnett, Atty. Gen., Frank E. Geaghan, Asst. Atty. Gen., Pierre, for appellee.

WUEST, Justice.

Primeaux was convicted of second-degree murder and two counts of aggravated assault. His convictions were affirmed by this court in *State v. Primeaux*, 328 N.W.2d 256 (S.D.1982).

Primeaux then filed this writ of habeas corpus in circuit court. He claims his trial counsel was ineffective by failing to insist the expert witness test Primeaux more thoroughly, by failing to obtain an opinion from a second or third expert, by attempting to prove insanity through the trial testi-

mony of lay witnesses and by "essentially abandoning" the insanity defense in closing argument. He also claims he was denied due process when the habeas court refused to provide him with a psychiatric expert.

After a hearing, the circuit court denied habeas corpus relief. Primeaux appeals. We affirm.

## I.

### PRIMEAUX WAS NOT DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

■ The United States Supreme Court has set forth a two-step test to determine whether a defendant has been denied effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). This court adopted the *Strickland* test to judge whether a defendant received effective assistance of counsel as guaranteed by Article VI, § 7 of the Constitution of South Dakota. *Luna v. Solem,* 411 N.W.2d 656 (S.D.1987); *Woods v. Solem,* 405 N.W.2d 59, 61 (S.D.1987). Primeaux therefore must prove both deficient representation and prejudice.

" 'The right to counsel is the right to effective assistance of counsel.' " *Miller v. Leapley,* 472 N.W.2d 517, 518 (S.D.1991) *habeas corpus granted in part on other grounds,* Civil No. 91–1017, 1993 WL 172904 (D.S.D. March 24, 1993); (quoting *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063, 80 L.Ed.2d at 692 (citing *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763, 773 n. 14 (1970))).

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 687–88, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of rea-

sonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–95 (citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83, 93 (1955)).

*Miller,* 472 N.W.2d at 518.

Primeaux was arraigned November 9, 1981 and the court granted his request for an independent psychiatric examination. The defense selected and retained Dr. David W. Bean, Chairman of the Department of Psychiatry at the University of South Dakota School of Medicine. Primeaux was examined by Dr. Bean on November 18, 1981 for approximately two hours. Trial counsel's associate held a meeting with Dr. Bean that same day to discuss his findings. At that meeting, Dr. Bean told the attorney he found Primeaux was competent to stand trial and that he found no signs or symptoms of mental illness but did find indications Primeaux was suffering from "voluntary alcoholic intoxication" at the time the stabbings occurred. Additionally, Dr. Bean requested Primeaux be examined by a neurologist, Dr. George C. Flora, M.D. for a possible seizure disorder. Dr. Bean submitted a written report to trial counsel on December 4, 1981. The report from Dr. Flora was submitted December 7, 1981. Dr. Flora's clinical impressions indicated "no evidence of focal neurological deficit nor seizure pattern" and "chemical dependency, mixed type, severe." Trial counsel then contacted Dr. Darrell Stephenson to discuss Primeaux's mental and neurological reports.

At trial, the defense elected not to call Dr. Bean. Dr. Bean was called by the prosecution to rebut opinion testimony from lay witnesses regarding Primeaux's sanity.

■ In his habeas action, Primeaux claims the examination by Dr. Bean was inadequate and trial counsel should have insisted the expert test Primeaux more thoroughly. He presents a laundry list of

tests he claims should have been done but presents no evidence they were not performed. Nor does he present any evidence the tests were necessary for a competent psychiatric examination.

Trial counsel and his associate found Primeaux "lucid, knowing and intelligent" during their many interviews with him. Both thought his mental faculties were "in good order." In short, there was nothing in Primeaux's background, in the information he gave counsel, in his behavior with counsel or in the medical and psychiatric reports to indicate that additional psychiatric testing should be pursued. When there are no grounds for doubting the accuracy of a psychiatric report, there is no obligation for counsel to seek further evaluation. *Mikel v. State*, 550 S.W.2d 863, 869 (Mo.Ct.App.1977). Counsel is not required to obtain repeat examinations until an advantageous report is acquired. *People v. Webster*, 54 Cal.3d 411, 285 Cal.Rptr. 31, 814 P.2d 1273 (1991) *cert. denied,* — U.S. ——, 112 S.Ct. 1772, 118 L.Ed.2d 431 (1992); *Pruett v. Commonwealth*, 232 Va. 266, 351 S.E.2d 1 (1986); *Weaver v. State*, 432 N.E.2d 5 (Ind.1982).

■ Dr. Bean found Primeaux "logical and coherent" and "of average intellectual ability." Primeaux expressed no "depressive symptomatology;" in fact, Primeaux denied depressive symptoms to Dr. Bean. He now asserts defense counsel should have conducted an investigation to provide the expert with family and historical background which Primeaux asserts left him in a "severe state of depression." Trial counsel could not give information he did not possess. The reasonableness of counsel's decision to investigate insanity depended on the information Primeaux supplied. *United States v. Miller*, 907 F.2d 994, 998 (10th Cir.1990); *United States v. Soto–Hernandez*, 849 F.2d 1325, 1329 (10th Cir. 1988); *State v. Pound*, 793 S.W.2d 505, 509 (Mo.1990). "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Strickland*, 466

U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 696. Where Primeaux did not give information to counsel, counsel could neither investigate it nor pass it on to the expert.

■ Primeaux next asserts his trial counsel should have sought second and third psychiatric opinions as to his sanity. However, trial counsel was legitimately concerned additional examinations would put more "ammunition in the hands of the prosecuting attorney." Counsel testified he wanted to avoid handing the prosecution an assembly of experts to parade before the jury, each and every one declaring Primeaux was sane. The decision was a strategic trial tactic.

■ Primeaux further claims that counsel was ineffective in trying to prove his insanity defense through the use of lay witnesses. By presenting witnesses who had observed Primeaux's behavior the day of the murder, counsel tried to show that despite the expert's opinion Primeaux knew right from wrong, the witnesses saw bizarre behavior the doctor did not observe. In cross-examination of Dr. Bean, counsel attempted to elicit testimony from the Doctor that a person could panic and temporarily "snap." Counsel's decision to use lay testimony to establish temporary insanity was a strategic trial decision; his only other choice was to abandon the insanity defense or obtain another expert opinion, thereby risking additional expert testimony that Primeaux was sane. We will not second-guess counsel's trial tactics. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694; *Aliberti v. Solem*, 428 N.W.2d 638, 641 (S.D.1988).

Primeaux also claims counsel "abandoned" the insanity defense in closing argument. A close reading of the trial court record shows counsel clearly argued insanity to the jury in his closing statement. The insanity defense was not abandoned. We find nothing in the performance of trial counsel that shows ineffective assistance of counsel in Primeaux's defense. Counsel's decisions were strategic judgments which we will not second-guess. It is the opinion of this court that under the difficult circumstances of this case, Primeaux's trial

counsel did an adequate job in representing his client at trial.

## II.

## PRIMEAUX WAS NOT DENIED DUE PROCESS OF LAW BY THE CIRCUIT COURT'S REFUSAL TO APPOINT A PSYCHOLOGIST IN HIS HABEAS PROCEEDING.

The habeas court denied Primeaux's motion to appoint a psychologist for his hearing. He asserts the testimony of a forensic psychologist, a Dr. Rypma, would show the examination by Dr. Bean was inadequate. Primeaux now asserts the denial of a court-appointed psychologist to help him establish his habeas claim was a violation of his right to due process under the Fourteenth Amendment.

■ Primeaux bases his claim on *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Primeaux stretches *Ake* too far. *Ake* holds that a state must provide an indigent defendant with psychiatric assistance at the guilt phase of a trial when the defendant has demonstrated his sanity may be a factor in determining guilt. *Ake*, 470 U.S. at 83, 105 S.Ct. at 1096, 84 L.Ed.2d at 66.

We therefore hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and as in the case of the provision of counsel we leave to the States the decision on how to implement this right.

*Id.*

■ Primeaux did have access to psychiatric assistance at the guilt phase of his trial. In fact, the State went further than required by *Ake* and gave Primeaux funds for a psychiatrist of his own choosing rather than a court-appointed expert.

The Seventh Circuit Court of Appeals rejected a similar claim in upholding a district court's conclusion there was no violation of due process when a court denied appointment of a psychiatrist to support a prisoner's claim of "incompetent" diagnosis by psychiatrists during the guilt phase of trial. *Silagy v. Peters*, 905 F.2d 986, 1012 (7th Cir.1990). In rejecting Silagy's claim the court said:

[W]e would be reluctant to open up this type of *Ake* claim to a battle of experts in a "competence" review . . .—a never ending process. . . . A conclusion to the contrary would require this Court and other federal courts to engage in a form of "psychiatric medical malpractice" review as part-and-parcel of its collateral review of state court judgments. The ultimate result would be a never-ending battle of psychiatrists appointed as experts for the sole purpose of discrediting a prior psychiatrist's diagnosis. We do not believe this was the intent of the Court in *Ake* when it held that indigent defendants who raise a defense of insanity are entitled to psychiatric assistance in the preparation of their defense.

*Id.* at 1013. The reasoning of *Silagy* on this issue was adopted by the Ninth Circuit Court of Appeals in *Harris v. Vasquez*, 949 F.2d 1497, 1517 (9th Cir.1990) *cert. denied*, — U.S. —, 112 S.Ct. 1275, 117 L.Ed.2d 501 (1992). The *Harris* Court said: "Allowing such battles of psychiatric opinions during successive collateral challenges to a [verdict] would place federal courts in a *psycho-legal quagmire resulting in the total abuse of the habeas process.*" *Id.* at 1518 (emphasis added).

This quagmire is exactly what the habeas court was referring to in its order denying funds for appointment of a psychologist at Primeaux's hearing: "[A]ppointment of expert witnesses as requested by the Applicant would serve no purpose but to deteriorate the trial of this matter into a trial of experts and not address the Consti-

tutional question as to ineffective assistance of counsel."

Primeaux had no constitutional right to a court-funded expert for his habeas corpus hearing; therefore, his due process rights were not violated by the habeas court's order denying appointment of a psychologist.

### III.

### THE STATE OF SOUTH DAKOTA HAD JURISDICTION OVER PRIMEAUX.

■ Primeaux asserts the south housing district of Wagner is in Indian Country and therefore the State had no jurisdiction to arrest him without the consent of the tribe and an extradition order. First, he has made no showing the south housing district is in Indian Country. Thus, he has failed in his burden of proof. See *Nachtigall v. Erickson*, 85 S.D. 122, 178 N.W.2d 198 (1970); *State v. Brech*, 84 S.D. 177, 169 N.W.2d 242 (1969). Secondly, Primeaux was arrested by tribal police who then turned him over to State authorities. "Where jurisdiction to try and punish an offender rests outside the tribe, tribal officers may exercise their power to detain the offender and transport him to the proper authorities." *Duro v. Reina*, 495 U.S. 676, 697, 110 S.Ct. 2053, 2066, 109 L.Ed.2d 693, 711 (1990) (holding the criminal enforcement power of tribes does not extend to tribal nonmember Indians) *supersession by statute noted sub nom., Mousseaux v. United States Comm'n of Indian Affairs*, 806 F.Supp. 1433 (D.S.D.1992).[1]

■ Even were we to find Primeaux's arrest was not legal, and we do not, his conviction would stand under the Ker–Frisbe rule.[2] *Ker v. Illinois*, 119 U.S. 436,

7 S.Ct. 225, 30 L.Ed. 421 (1886); *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *Winckler*, 260 N.W.2d at 363. We decline Primeaux's request to overturn *Winckler* to the extent it adheres to the Ker–Frisbie rule. It is established law in this state that even an illegal arrest does not render a subsequent conviction void. *State v. Spotted Horse*, 462 N.W.2d 463, 468 (S.D.1990) *cert. denied*, —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991); *Davis v. Muellar*, 643 F.2d 521, 527 (8th Cir.1981) *cert. denied*, 454 U.S. 892, 102 S.Ct. 387, 70 L.Ed.2d 206 (1981); *Winckler*, 260 N.W.2d at 363.

Primeaux's final argument is that the knife found on his person should not have been admitted into evidence because it was the result of an illegal search as the State had no jurisdiction in the Wagner housing area. He did not argue this issue at his habeas hearing below and so may bring it before this court only under the plain error rule. SDCL 23A–44–15. The arrest of Primeaux was legal. Tribal police detained Primeaux and held him for State authorities. The search of Primeaux's person was made incident to a lawful arrest; therefore, the knife was properly admitted into evidence.

MILLER, C.J., concurs.

SABERS, J., concurs specially.

AMUNDSON, J., dissents in part and concurs in part.

HENDERSON, J., dissents.

SABERS, Justice (concurring specially).

Although Primeaux meets the deficient performance part of the *Strickland* test,

---

**1.** We note Congress subsequently passed 25 U.S.C. § 1301 which expands the jurisdiction of Indian tribes to criminal jurisdiction over nonmember Indians as defined in § 1153 of Title 18. A federal district court has applied the statute retroactively. *Mousseaux*, 806 F.Supp. at 1443. The statute does not address tribal power to detain or turn over a person who has committed an offence in another jurisdiction.

**2.** The Ker–Frisbe rule, as expressed by this court in *State v. Winckler*, 260 N.W.2d 356, 363

(S.D.1977) (citing 4 Wharton's Criminal Procedure § 1484 at 39 (1957)) states:

When a person accused of a crime is found within the territorial jurisdiction wherein he is so charged and is held under process legally issued from a court of that jurisdiction, neither the jurisdiction of the court nor the right to put him on trial for the offense charged, is impaired by the manner in which he was brought from another jurisdiction, whether by kidnapping, illegal arrest, abduction, or irregular extradition proceedings.

he has not shown that the deficient performance prejudiced his defense to the extent that he was deprived of a fair or reliable trial. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

In my view, even present counsel fails to show that Primeaux's violent acts were caused by mental illness. He has produced no medical reports to that effect. There is no showing that these violent acts resulted from anything other than "voluntary alcoholic intoxication." Even at this time, there is "no objective data to support the supposition of the presence of mental illness at the time of the alleged criminal activity that would either substantially reduce this individual's abilities to know right from wrong or prevent him from maintaining his behavior in conformity with the requirements of the law." *See* Dr. Bean's conclusion. As further stated by Dr. Bean, it was "highly doubtful that any form of central nervous seizure disorder was present at the time of the alleged criminal activity which would in any manner explain or void the culpability of this individual's alleged criminal activity."

In summary, even the present record reflects that Primeaux's violent acts resulted from voluntary alcoholic intoxication, which is neither a mental illness nor a defense. A showing that the medical examination could have been more thorough is not enough to establish the second prong of *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Therefore, there is no showing that the deficient performance prejudiced the defense.

AMUNDSON, Justice (dissenting in part and concurring in part).

Trial counsel obviously was taking the position that the only defense available in defending Primeaux was insanity. I reach this conclusion based on the fact that after receiving Dr. Bean's unfavorable routine evaluation report, counsel elected to attempt to prove the defense through eyewitness lay persons. This could easily be construed as a reasonable trial strategy under the circumstances. The troubling aspect of the defense, in my mind, surfaces during State's rebuttal testimony.

The prosecution called Dr. Bean, who had been employed by the defense team, as its witness to opine that Primeaux was sane at the time of the murder. While Dr. Bean was being examined, the defense stipulated on the record to his qualifications as an expert witness. This in and of itself is not ineffective assistance, but we must go on. Next, the record reflects the following colloquy between the prosecutor and Dr. Bean:

Q  Did there come a time when you had an occasion to visit with Mr. Primeaux?

A  Yes.

Q  When was that?

A  That was on November 18th, 1981.

Q  November when?

A  November 18th, 1981.

Q  And did that occasion come about as a result of an order by this court?

A  There was an order. That was not my understanding of the reason for the visit.

Q  Okay, what was your understanding?

A  I had been *contacted by his attorney* to conduct a psychiatric interview and evaluation. (Emphasis supplied.)

Counsel interjected no objection to this disclosure to the jury that Dr. Bean was originally the defense expert, nor was any motion in limine presented to the court prior to trial requesting the trial court to direct the prosecution to refrain from disclosing such fact to the jury.

This court has previously ruled in *State Highway Comm'n v. Earl,* 82 S.D. 139, 148, 143 N.W.2d 88, 92 (1966), on use of a party's expert by the opposing party during trial, and held as follows:

Accordingly, it would appear to be settled law in South Dakota that an expert witness, such as an appraiser, may be compelled, upon payment or tender of expert witness fees and expenses, to express his opinion of value formed while appraising property under the employment for the party against whom the testimony is offered. The party calling

such expert makes him his witness, *therefore, the fact of prior employment or payment by the opposite party is not relevant or material.* (Emphasis supplied.)

In *Rapid City v. Baron,* 88 S.D. 693, 227 N.W.2d 617 (1975), this court while discussing the above quote from *Earl,* stated that it saw little or no probative value in the admission of such evidence of prior employment, but if any value exists it is " 'outweighed by the evidentiary counterfactors of *prejudice.*'" *Id.* at 697, 227 N.W.2d at 619 (quoting *Department of Pub. Works & Bldgs. v. Guerine,* 19 Ill.App.3d 509, 311 N.E.2d 722, 725–26 (1974)).

If it is prejudicial to disclose to a jury the prior employment of an expert by the opposing party in a condemnation case, the only logical conclusion has to be that such a disclosure amounts to prejudice in the prosecution of a murder case. Therefore, since this prejudicial testimony from Dr. Bean was admitted without objection from defense counsel, I can only conclude that this constituted representation which fell below the reasonableness standard of *Strickland.* Allowing this testimony to go before the jury had the effect of providing the final blow in knocking the pins out from under an already weakened defense. As to the second prong of *Strickland,* this prejudicial testimony denied Primeaux a fair trial which he was entitled to receive and definitely was not a result which can be diagnosed as reliable.

This court held in *State v. McBride,* 296 N.W.2d 551 (S.D.1980), that an individual charged with a crime is entitled to complete equality under our laws. This right to equality was jeopardized where objectionable, irrelevant evidence was allowed to go before the jury. In this case, Primeaux was prejudiced by the testimony of Dr. Bean that he was originally retained by Primeaux to evaluate him in regards to the insanity defense.

I concur with the majority's holding on Part II, but would add that my position would be different if the request for expert assistance had been for the employment of an attorney to render an opinion on the subject at issue.

HENDERSON, Justice (dissenting).

I respectfully dissent. As it appears that there are really no facts developed by the majority writing, it is incumbent that the reader have appreciation of the factual background in this case.

Primeaux was a twenty-year-old American Indian at the time of this defense. He had been recently discharged from the United States Army for fighting with a knife. One of the defense witnesses, a lay person, testified that Primeaux would "get up once in a while and salute." He was a very troubled young man and evidence established, by lay testimony, that he talked of being lonely and sad and wanted to belong to some part of society but mentioned that everywhere he went he was not wanted. Primeaux's mother died while he was serving in the United States Army, and it had a depressing effect upon him. On the date of the homicide, a witness testified that he was walking down the street with Primeaux and Primeaux was singing songs from the military service and, as he did so, was saying cadence, right, left. Out of nowhere, the witness testified that after he would do this cadence, he would stop and pause and make commands and would then bellow "forward march." There was testimony that his father really did not know him any longer after he returned from the service. On the day of the homicide, he acted very strange and he would kick his heels and salute, expressing he was going to take his flag and hang it on his friend's wall. Although there had been no preceding argument or fisticuffs, he acted aggressive to his friend. Alcoholic consumption exacerbated the peculiar conduct.

Primeaux stabbed the decedent, Rodney Provost, fifteen times and also stabbed two other people at a trailer home in Wagner, South Dakota. The majority does not point it out, but Primeaux was sentenced to life imprisonment plus four and six years for two counts of aggravated assault. These assault convictions and judgments were to

run concurrently with the life sentence. On the night of the homicide, a series of fights erupted at a residence in Wagner, South Dakota. Alcohol played a major part in the evening's festivities. Two women were arguing in this residence in addition to an antecedent assault, wherein Provost had pushed one Fred Kazena, Jr., out of the home. While these events were going on, Primeaux was not even in the home. In fact, when all the trouble was going on in this home, Primeaux knocked on the door. He was warned by the ejected Kazena that the people inside were drunk and that Provost had threatened to bite Kazena. According to the State's brief, Provost punched Primeaux in the mouth, as Primeaux entered, sending Primeaux backwards off the porch and onto a car parked outside. Primeaux "came to," per State's brief, and walked up the steps and knocked on the door again. He was told he could come in and he did, whereupon he was offered beer to drink. Primeaux sat down in the living room.

Primeaux had been drinking throughout the afternoon and evening. A woman named Debbie and Provost began to fight and suddenly Primeaux, not engaged in the fight at all, pulled a knife from his boot and approached a woman called Lydia, who was attempting to intervene and try to stop the fight. Primeaux then stabbed Lydia in the upper left back. When she stood up, Primeaux stabbed her again, this time close to her left breast. Provost was on the floor, and had quit fighting with Debbie, apparently as a result of the startling development of Primeaux stabbing Lydia. Primeaux then stood over Provost and inflicted several stab wounds. These included wounds in the neck and five knife wounds to the chest and six wounds in the upper back.

Kazena then reentered the home and was immediately stabbed by Primeaux. Primeaux, who had literally gone berserk, stabbed Kazena again. Later, Primeaux went to a friend's house and went to sleep, explaining that Provost had slapped his sister and then slapped him and he decided to take out his knife. Primeaux was covered with blood on his face, trousers and

boots, when an officer arrived at the friend's house.

Trial counsel attempted to prove insanity by lay witnesses only. No notice of the insanity defense was served by defense counsel upon the State's Attorney as required by South Dakota law. State made a motion to strike the insanity defense. Trial court expressed, in denying the State's Attorney's motion to strike this defense: "[T]he court has to observe that without such [expert] testimony the defense is going to be hard put to perhaps convince this jury[.]"

Eight days before the trial was scheduled to commence, Dr. Bean submitted his only report to defense counsel. Lead trial counsel did not discuss Dr. Bean's evaluation and his report until after the trial commenced, i.e., no preparation for trial. According to Bean's evaluation, Habeas Corpus Transcript, page 23: (1) Primeaux was competent to stand trial, and (2) there were no signs or symptoms of mental illness at the time of the alleged crime. Dr. Bean's evaluation took place in the Minnehaha County Jail in Sioux Falls, South Dakota, and lasted one hour and forty-five minutes. Recognized tests in the field of forensic psychology were not administered by Dr. Bean. These include: Rorschach ink blot; thematic apperception, Minnesota Multiphasic Personal Inventory, Stanford–Binet: Wechsler–Belview, Wechsler Adult Intelligence Seale, Wechsler Memory Scale; Wechsler–Bellevue; Reitan Neutopsychological Battery, Bender–Gestalt Drawing; Graham–Kendall Memory for Designs, or Szond. Dr. Bean did not develop or obtain medical history of any diseases Primeaux had suffered, accidents, prolonged fevers, insomnia, drowsiness or venereal diseases. Primeaux's childhood, hostility, or schooling was not developed nor his degree of mental ability. In short, this special writer maintains, the examination was perfunctory. Couple this with this testimony, page 23, Habeas Corpus Hearing Transcript:

> Mr. Tappe: ... you did not discuss the insanity defense with Dr. Bean, at least prior to trial?

Mr. Wipf: Are you talking about me, personally?

Mr. Tappe: You, personally, yes.

Mr. Wipf: No, I would say that's true.

Mr. Tappe: You would say that's true, that you did not discuss the case personally with Dr. Bean?

Mr. Wipf: No, that Mr. Cotton did that.

As I read the record, Mr. Cotton had been out of law school about five months.

In the defense counsel's opening statement, his only mention of insanity was: "The evidence will show panic, fright, and we believe an element of temporary insanity. Thank you very much."

Trial counsel essentially abandoned the insanity defense in closing argument. Said defense was barely mentioned and it was impacted with these words to the jury: *"I'm not going to tell you that Roscoe was mentally ill."* (Emphasis added.) Gone was the defense entered (not guilty by reason of mental illness which was instructed by the trial court, instructions no. 15 and 21). Furthermore, defense counsel expressed, *"... and I'm not going to tell you he had a depraved mind."* (Emphasis added.) Gone was any reason for the trial court to have instructed on what constituted a depraved mind, instruction no. 24. I note, per instruction no. 14, that Primeaux was given a self-defense instruction for the jury to consider. In closing argument, lead defense counsel expressed: "I am not going to tell you that he did this in self-defense." Habeas defense counsel introduced Respondent's Exhibit H into evidence, a fifteen-page transcribed interview between Attorney Wipf and Primeaux on October 19, 1981. At page 13 thereof, Primeaux told Wipf that he could not handle the victim with his fists, that victim "was enraged," that he was in "physical danger," that victim was "ready" and "coming at me," and "I felt fear of him." The statements of defense counsel prejudiced Primeaux. Three lay defense witnesses, namely Carol Weddell, Anthony Ponca, and Denise Freeman testified, essentially, that Primeaux did have a depraved mind. So defense counsel stripped away the impact of the lay witnesses.

Under *State v. Phipps*, 318 N.W.2d 128 (S.D.1982), there was a usurpation of Primeaux's constitutional right to effective assistance of counsel. Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), there was a reasonable probability that but for these professional errors, the result would have been different. *Strickland* defined reasonable probability as "a probability *sufficient to undermine confidence in the outcome."* 466 U.S. at 694, 104 S.Ct. at 2068. (Emphasis supplied mine.) Justice Amundson has expressed that Primeaux did not receive a fair trial because, essentially, of the manner in which Dr. Bean's testimony was placed before the jury and characterizes it as being prejudicial testimony to such an extent that the result is not reliable. I agree with that comment, based upon his observation, plus the matter set forth in his writing.

Calling three lay witnesses to the stand to advance an insanity defense, without expert testimony, was destined for failure. State, realizing Dr. Bean (Primeaux's expert) could easily negate this lay testimony, called Dr. Bean as a rebuttal witness. Defense counsel had not prepared Primeaux's case effectively because Dr. Bean's evaluation and examination was extremely limited, as set forth above. Unfortunately, defense counsel did not interview Primeaux's friends or his relatives, failed to check into his medical history, and obtained no historical data on Primeaux. In effect, defense counsel left his client defenseless. This has been condemned in *Profitt v. Waldron*, 831 F.2d 1245, 1248–49 (5th Cir.1987), and *People v. Saunders*, 54 A.D.2d 938, 388 N.Y.S.2d 142 (1976).

Remarkably, a lawyer recently graduated from law school, appears to have been delegated by defense counsel to bear the brunt of establishing the defense of insanity (this lawyer, Mr. Cotton, handled the cross-examination of Dr. Bean), and he candidly admitted, under oath, that he did not know if any forensic psychology tests had been performed upon his client. Lead counsel for Primeaux testified he was not sure if he ever talked to Dr. Bean. There-

at, new defense counsel could move to secure an expert's opinion on the mental condition of Primeaux. The habeas court refused to appoint psychiatric assistance at that proceeding to develop Primeaux's claim that the initial evaluation at the trial court level was inadequate, and trial counsel relied upon a singular evaluation which was perfunctory and highly damaging to Primeaux's defense of insanity. Trial defense counsel should have explored obtaining a second opinion—he had a duty to investigate. *Beavers v. Balkcom,* 636 F.2d 114 (5th Cir.1981).

It appears there was no prompt and thorough investigation to determine what an undertaking might disclose. We have ineffective assistance of counsel before us and I must call a spade—a spade. *Powell v. Alabama,* 287 U.S. 45, 58, 53 S.Ct. 55, 60, 77 L.Ed. 158 (1932); *State v. McBride,* 296 N.W.2d 551, 553 (S.D.1980).

I cannot join the majority opinion. A new jury trial should be held herein with an opportunity for pretrial motions, discovery, and preparation for trial. Primeaux, in my opinion, was denied the effective assistance of counsel guaranteed to him by the Sixth Amendment to the United States Constitution. He is before us on Habeas Corpus, the great writ of liberty. He has now been confined for over eleven years in the State Penitentiary. He was twenty years old when he was charged and is approximately thirty-one years old now. He faces a lifetime of incarceration. It does not appear he had a fair trial. Justice demands that he receive one. A certain depth must attend every defense. True, lawyers have great diversity and this begets a different quality of representation. Underlying it all, there must exist a predominating range of legal competence to achieve the task before that lawyer. Simply put, a lawyer who places a defense of insanity before a jury must have some substance within that defense. In closing argument, defense counsel expressed, "The man would have to be crazy to do that. *Oh, I guess that is one of our defenses, mental illness."* (Emphasis added.) This statement was but an echo which reigned in the defense encampment by which it was environed.