# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 01-3695

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of North Dakota. |
| Billy Jo Lara, also known as | * | |
| Billy Joe Lara, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted:  June 12, 2002

Filed:  June 24, 2002

———————

Before HANSEN, Chief Judge, FAGG and BOWMAN, Circuit Judges.

———————

FAGG, Circuit Judge.

Bureau of Indian Affairs officers arrested Billy Jo Lara on the Spirit Lake Nation Reservation for public intoxication. Lara is an Indian, but not a member of the Spirit Lake Nation. When BIA officers reminded Lara of the order excluding him from the Spirit Lake Nation Reservation, Lara struck an officer with his fist. Lara pleaded guilty in tribal court to three violations of the Spirit Lake tribal code, including violence to a police officer. Later, Lara was charged in federal court with misdemeanor assault of a federal officer. Lara moved to dismiss the indictment, claiming the federal charges violated the prohibition against Double Jeopardy and

impermissible selective prosecution. The district court[*] denied Lara's motion to dismiss. Lara then entered a conditional guilty plea, reserving the right to appeal the denial of his pretrial motions. Having carefully reviewed de novo the district court's denial of Lara's motion to dismiss the indictment, we affirm. United States v. Kriens, 270 F.3d 597, 602 (8th Cir. 2001), cert. denied, No. 01-8961, 2002 WL 424553 (U.S. Apr. 15, 2002).

Lara contends the federal prosecution duplicates the tribal conviction, holding him twice responsible for the same criminal conduct in violation of the Double Jeopardy Clause. Under the separate sovereign doctrine, a defendant may be prosecuted by multiple governmental units for the same conduct if the governmental units draw their authority from separate sources of power. Heath v. Alabama, 474 U.S. 82, 88 (1985). Lara argues the separate sovereign doctrine does not apply because the Spirit Lake Nation and the federal government draw their power from the same source, the United States Constitution. The government responds the Spirit Lake Nation draws its authority from its retained sovereignty, not from a Congressional delegation of power. According to the Government, the Spirit Lake Nation is a separate sovereign and the successive federal prosecution is permissible. Resolution of Lara's contention, then, depends on the Spirit Lake Nation's source of power to prosecute Lara.

The Supreme Court concluded that Indian nations draw their authority to prosecute criminal offenses by tribal members from the Indian nation's retained sovereignty and that tribal courts do not have jurisdiction over nonIndians. United States v. Wheeler, 435 U.S. 313, 325-26 (1978); Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 195 (1978) (tribes have no jurisdiction over nonIndians). In 1990, the Supreme Court ruled that Indian nations lacked authority to prosecute nonmember

---

[*]The Honorable Alice R. Senechal, United States Magistrate Judge for the District of North Dakota, sitting by consent of the parties under 28 U.S.C. § 636(c).

Indians for criminal acts. Duro v. Reina, 495 U.S. 676, 685 (1990). Duro concluded by noting that any practical deficiencies in the present jurisdictional scheme should be addressed by Congress, "which has the ultimate authority over Indian affairs." Id. at 698. Immediately after Duro issued, Congress amended the Indian Civil Rights Act (ICRA), redefining tribal powers of self-government to include "the inherent power of Indian tribes, hereby recognized and affirmed, to exercise criminal jurisdiction over all Indians." 25 U.S.C. § 1301(2) (1994). Thus the amended ICRA clarifies that Indian nations have jurisdiction over criminal acts by Indians, whether the Indians are tribal members or nonmembers.

Because the courts are obligated to interpret the Constitution and declare what the law is, it is important to distinguish whether Duro was based on constitutional law or federal common law. Cooper v. Aaron, 358 U.S. 1, 18 (1958). If Duro is a constitutional opinion, we must inquire whether Congress had the authority to overrule the Supreme Court's decision. Id.; City of Boerne v. Flores, 521 U.S. 507, 536 (1997). On the other hand, if Duro is based on federal common law, Congress properly clarified its intent by amending the ICRA, and we defer to Congress. United States v. Enas, 255 F.3d 662, 675 (9th Cir. 2001) (citing Morton v. Mancari, 417 U.S. 535, 551-52 (1974)), cert. denied, 122 S. Ct. 925 (2002).

The Supreme Court has not addressed the relationship between Duro and the amended ICRA, or addressed the substantive issue of whether Congress is delegating authority under the amended ICRA or is recognizing retained tribal authority. We were presented with these very issues in United States v. Weaselhead, 156 F.3d 818, 821 (8th Cir. 1998), reh'g granted and opinion vacated by, 165 F.3d 1209 (8th Cir.) (en banc), cert. denied, 528 U.S. 829 (1999). In Weaselhead, an evenly divided en banc court affirmed the district court's denial of Weaselhead's motion to dismiss the indictment on Double Jeopardy grounds. The district court in Weaselhead concluded that Congress recognized retained tribal sovereignty when stating that tribes have criminal jurisdiction over nontribal members. United States v. Weaselhead, 36 F.

Supp.2d 908, 914-15 (D. Neb. 1997). Although we are not bound by the evenly divided court's decision, we reach the same result. See United States v. Grey Bear, 863 F.2d 572, 573 (8th Cir. 1988) (holding an equally divided en banc opinion decides the case, but has no precedential effect).

Like the district court, we conclude Duro grounds its holding in federal common law, not Constitutional law, because Duro discusses tribal sovereignty without reference to the Constitution. See United States v. Lara, No. C2-01-58, 2001 WL 1789403, *3 (D.N.D. Nov. 29, 2001); see also Enas, 255 F.2d at 673-75; Weaselhead, 156 F.3d at 825 (dissent). Having concluded tribal sovereignty is governed by federal common law, we must defer to Congress. Enas, 255 F.2d at 673-75. The plain language of the amended ICRA together with the amendment's legislative history convinces us that Congress intended to recognize inherent tribal power, not to expressly delegate Congressional authority. Weaselhead, 36 F. Supp.2d at 912-913 ("Indian tribal-governments have retained the criminal jurisdiction[] over non-member Indians and [the amendment] is not a delegation of this jurisdiction but a clarification") (quoting H. R. Conf. Rep. No. 102-261 at 3-4 (1991)). The Spirit Lake Nation, then, draws its power to prosecute Lara from its retained sovereignty. Because tribal authority and federal authority arise from the separate sources of the tribe's inherent power and the federal Constitution, the Double Jeopardy clause is not offended by two separate sovereigns convicting Lara for crimes arising from the same conduct. See Enas, 255 F.3d at 675; United States v. Archambault, 174 F. Supp.2d 1009, 1022 (D.S.D. 2001); Weaselhead, 36 F. Supp.2d at 915.

Next, Lara contends the federal Government's decision to prosecute him for misdemeanor assault resulted from impermissible selective prosecution based on race. We disagree. At issue is the United States Attorneys' policy of not prosecuting federal misdemeanors for acts that resulted in earlier state or federal convictions, known as the Petite policy. United States Attorneys' Manual § 9-2.031 (describing the Petite policy regulating successive misdemeanor prosecutions). Lara's selective

-4-

prosecution claim must fail because the Petite policy does not confer substantive rights.  United States v. Basile, 109 F.3d 1304, 1308 (8th Cir. 1997).  And even if it did, Lara failed to show that the Petite policy has a discriminatory effect and is motivated by a discriminatory purpose.  United States v. Armstrong, 517 U.S. 456, 465 (1996).

We thus affirm the district court's denial of Lara's motion to dismiss the indictment.

HANSEN, Circuit Judge, dissenting.

I respectfully dissent.  In my opinion, Lara cannot be subject to a federal prosecution that duplicates his tribal conviction because the tribe's authority to assert criminal jurisdiction over him, a nonmember Indian, is congressionally delegated. Where two sovereigns draw their authority from the same source of power, the Double Jeopardy Clause prohibits a second conviction involving the same criminal conduct.  See Heath, 474 U.S. at 88.  In my view, the vacated panel opinion in United States v. Weaselhead, 156 F.3d 818 (8th Cir. 1998), authored by Judge Wollman, sets out the correct analysis, and I have taken the liberty to draw freely from it.

As drafted, the revisions to the ICRA purport to simply recognize and affirm "the inherent power" which (contrary to the Supreme Court's interpretation and prior holdings) Indian tribes have always held "to exercise criminal jurisdiction over all Indians." 25 U.S.C. § 1301(2).  The court today holds that Congress is permitted, as a matter of federal common law, to recast history in a manner that alters the Supreme Court's stated understanding of the fundamental organizing principles by which Indian tribes were incorporated into our constitutional system of government as recognized in Duro, Wheeler, and Oliphant.  Because those principles are not only based on federal common law but are also most firmly grounded in constitutional principles, I would hold that while Congress may certainly delegate new powers to

tribes, it may do so only under constitutional constraints. It may not rewrite the history of retained sovereignty under the label of federal common law.

By virtue of their status as the aboriginal people of this continent, Indian tribes retain certain incidents of their preexisting inherent sovereignty. Among these is the right to internal self-government, which "includes the right to prescribe laws applicable to tribe members and to enforce those laws by criminal sanctions." Wheeler, 435 U.S. at 322. If the power to punish nonmember Indians emanated from a tribe's inherent sovereignty, double jeopardy would not be implicated by a subsequent federal prosecution for the same conduct. If, however, the ultimate source of power authorizing a tribal criminal conviction is "an aspect of the sovereignty of the Federal Government which has been delegated to the tribes by Congress," the Double Jeopardy Clause would bar a subsequent federal prosecution. Id.

"The sovereignty that the Indian tribes retain is of a unique and limited character" which "exists only at the sufferance of Congress and is subject to complete defeasance." Wheeler, 435 U.S. at 323. The Court stated in Wheeler, that "the sovereign power of a tribe to prosecute its members for tribal offenses clearly does not fall within that part of sovereignty which the Indians implicitly lost by virtue of their dependent status. The areas in which such implicit divestiture of sovereignty has been held to have occurred are those involving the relations between an Indian tribe and nonmembers of the tribe." Id. at 326. "[T]he dependent status of Indian tribes within our territorial jurisdiction is necessarily inconsistent with their freedom independently to determine their external relations." Id.

The Supreme Court's holding in Duro, which states that Indian tribes do not have inherent sovereignty to assert criminal jurisdiction over nonmember Indians, is grounded in constitutional law. In Duro, the Court confirmed its earlier statements characterizing the dependent status of tribes and their power of internal self governance, as well as our prior conclusion that, at least in criminal matters, a tribe's

inherent sovereign powers extend only to tribe members, irrespective of an individual's racial status as an Indian. 495 U.S. at 686; see also, Greywater v. Joshua, 846 F.2d 486, 493 (8th Cir. 1988) ("We thus conclude that the Tribe's authority to prosecute nonmember Indians is nonexistent."). The Court in Duro recognized that when a criminal prosecution reflects a "manifestation of external relations between the Tribe and outsiders," including nonmember Indians, this type of power is necessarily "inconsistent with the Tribe's dependent status, and could only have come to the Tribe by delegation from Congress." 495 U.S. at 686. Importantly, the Court stated that any such congressional delegation of power is "subject to the constraints of the Constitution." Id. The Court explained that "[t]he exercise of criminal jurisdiction subjects a person not only to the adjudicatory power of the tribunal, but also to the prosecuting power of the tribe, and involves a far more direct intrusion on personal liberties." Id. at 688. Because all Indians are also full citizens of the United States, such an intrusion necessarily implicates "constitutional limitations," and we must reject "an extension of tribal authority over those who have not given the consent of the governed that provides a fundamental basis for power within our constitutional system." Id. at 693-94.

The Duro Court further stated:

Criminal trial and punishment is so serious an intrusion on personal liberty that its exercise over non-Indian citizens was a power necessarily surrendered by the tribes in their submission to the overriding sovereignty of the United States. We hesitate to adopt a view of tribal sovereignty that would single out another group of citizens, nonmember Indians, for trial by political bodies that do not include them. As full citizens, Indians share in the territorial and political sovereignty of the United States. The retained sovereignty of the tribe is but a recognition of certain additional authority the tribes maintain over Indians who consent to be tribal members. Indians like all other citizens share allegiance to the overriding sovereign, the United States. A tribe's

additional authority comes from the consent of its members, and so in the criminal sphere membership marks the bounds of tribal authority.

495 U.S. at 693 (internal quotations omitted). Thus, "the sovereignty retained by the tribes in their dependent status within our scheme of government" does not include the power of criminal jurisdiction over nonmembers, even if they are Indians. Id. at 684.

While the Supreme Court has not yet had occasion to directly construe the post-Duro revision of the ICRA, the Court has since affirmed the principle that jurisdiction of an Indian tribe over nonmembers of the tribe, irrespective of race, is not within "[g]eneral principles of 'inherent sovereignty'" and is not possible, absent an affirmative delegation of power from Congress. See South Dakota v. Bourland, 508 U.S. 679, 694-95 (1993). Additionally, a subsequent concurring opinion recognized that since Duro, "Congress passed a statute expressly granting tribal courts . . . jurisdiction" over nonmember Indians, and distinguishing Duro factually by explaining that "here, we are concerned with the extent of tribes' inherent authority, and not with the jurisdiction statutorily conferred on them by Congress" as in the post-Duro amendment context. Nevada v. Hicks, 533 U.S. 353, 377 n.2 (2001) (Souter, J., concurring).

Prior to the revisions, tribal criminal jurisdiction over nonmember Indians did not exist as it had been "necessarily surrendered by the tribes in their submission to the overriding sovereignty of the United States." Duro, 495 U.S. at 693. It is beyond Congress's power to declare that the inherent sovereignty of a tribe has always provided it with criminal authority over nonmember Indians where the Supreme Court has found the facts to be otherwise. It is my opinion that the "ascertainment of first principles regarding the position of Indian tribes within our constitutional structure of government is a matter ultimately entrusted to the Court and is thus beyond the scope of Congress's authority to alter retroactively by legislative fiat.

Fundamental, *ab initio* matters of constitutional history should not be committed to '[s]hifting legislative majorities' free to arbitrarily interpret and reorder the organic law as public sentiment veers in one direction or another." Weaslehead, 156 F.3d at 824 (quoting City of Boerne v. Flores, 521 U.S. 507, 529 (1997)) (alteration in original) (opinion vacated). This conclusion is firmly grounded in constitutional principles which guarantee equal protection to all citizens regardless of race[**] and also protect personal liberties; it is inextricably linked to the very basis on which our constitutional system was established–that the authority to govern is derived from the consent of the governed. Thus, in spite of Congress's attempt to characterize this grant of authority as a mere recognition of a power that has always existed, the post-Duro amendment can be nothing more nor less than an affirmative delegation of jurisdiction from Congress to the tribes, the validity of which is not at issue in this case.

Because the power of the tribe to punish nonmember Indians emanates solely from a congressional delegation of authority, the tribal court and the federal court in which a second conviction is now sought to be secured do not "draw their authority to punish the offender from distinct sources of power" but from the identical source. Heath, 474 U.S. at 88. That single source is the legislative authority of the federal Congress exercising, with the President's approval, the power of the United States as the overriding sovereign under the Constitution. The dual sovereignty limitation on the constitutional protection from double jeopardy is therefore inapplicable, and the Double Jeopardy Clause bars the federal prosecution of Lara for the same conduct that provided the factual basis for his earlier conviction in tribal court.

---

[1]The Equal Protection Clause of the Fourteenth Amendment is made applicable to the federal government through the Fifth Amendment's Due Process Clause. See Bolling v. Sharpe, 347 U.S. 497, 499 (1954); United States v. Iron Shell, 633 F.2d 77, 89 n.17 (8th Cir. 1980), cert. denied, 450 U.S. 1001 (1981).

For these reasons, I would reverse the district court's denial of Lara's motion to dismiss the indictment. I respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.